## Rees vs. Ludington and others.

Under chapter 120, R. S. 1849, the lien of mechanics and others is subordinate to that of the vendor of the land on which the building is erected, for unpaid purchase money.

If after the building is erected, the vendor of the land executes a deed for it to
the vendee, and at the same time takes from him a mortgage on it for the
unpaid purchase money, the mortgage is to be regarded as only a continu-
ance of the vendor's lien in another form, and has preference over the liens
of the mechanic and the material man.

The statute does not create any distinction between the employer's ownership of
the building and his ownership of the land with which it is connected; and
the former must follow the latter, unless it has been separated by the agree-
ment of competent parties.

The mechanic or material man acquires a lien from the commencement of the
building, equal only to that of a judgment, upon the legal or equitable estate
of their employee in the premises.

June Term,
1860.

---

REES
v.
LUDINGTON
et al.

APPEAL from the Circuit Court for *Milwaukee* County.
The case is stated in the opinion of the court.

*A. C. Fraser* and *Wells & Brigham,* for appellants:

1.  Under the statute (R. S. 1849, chap. 120), the build-
ing itself was liable first for the debts contracted in its erec-
tion.  R. S. 1839, p. 141; Laws of 1842, p. 19; R. S. 1849,
chapter 120, sec. 1; *Savoy vs. Jones,* 2 Rawle, 343; *Bickel vs.
James,* 7 Watts, 9; *Holdship vs. Abercrombie,* 9 id., 52; *Pres-
byterian Church vs. Stettler,* 26 Penn. St., 246.  2. Since Hull
was the *owner* of the building, within the meaning of the
statute (*Loonie vs. Hogan,* 5 Seld., 435); and under his con-
tract, at the time of the commencement of the building, had
an interest in the land, which was real estate, which he
might mortgage, and which was subject to levy and sale on
execution against him (*Dean vs. Pyncheon,* 3 Chand., 9;
*Jackson vs. Scott,* 18 Johns., 94; *Talbot vs. Chamberlin,* 3
Paige, 219; *Jackson vs. Parker,* 9 Cow., 81; *Bull vs. Sykes,*
7 Wis., 449), the appellants have a lien on that interest par-
amount to the respondent's mortgage.  Sec. 1, chap. 120,
R. S. 1849; *Lynch vs. Dearth,* 2 Penn., 101; *Belmont vs.
Smith,* 1 Duer (S. C.), 675; *Lyon vs. McGuffey,* 4 Barr, 126.
3. By taking a mortgage for the purchase money, the re-
spondent extinguished his equitable lien therefor.  4 Kent's
Comm. (9th ed.), 171; *Boon vs. Murphy,* 6 Blackf., 273; *Cole
vs. Scott,* 1 Wash. (Va.), 141; *Eskridge vs. McClure,* 2 Yerg.,
84; *Mayham vs. Coombs,* 14 Ohio, 428; *Little vs. Brown,* 2
Leigh, 353; *Shirly vs. Sugar Refinery,* 2 Edw. Ch., 505;
*Fish vs. Howland,* 1 Paige, 20; *Warner vs. Van Alstyne,* 3
id., 513.  His lien under the mortgage was subsequent to

June Term,
1860.

REES
v.
LUDINGTON
et al.

the commencement of the building, and therefore subsequent to the liens of the appellants. 4. The record of the land contract was not constructive notice to the appellants, they not being subsequent purchasers within the meaning of the statute. R. S. 1849, chap. 60, sec. 3.

*Waldo, Ody & Van Valkenburgh*, for respondent, admitted that Hull was the " owner" of the land within the meaning of the statute, and that his right, title and interest in and to the land, as vendee in the contract of sale, was subject to the lien of the material men "before any other lien which originated subsequent to the commencement of the house." This right, they insisted, was simply a right in equity to a conveyance of the land in fee, subject only to the just claims of the vendor for the purchase money. The purchasers, under a judgment to enforce the appellants' lien, will purchase this right, and no other. 2. The deed to Hull and mortgage back were parts of the same transaction, and in contemplation of law were executed and delivered at the same moment. Hull had therefore a seizin for an instant only ; and such a seizin will not enable a judgment creditor who has a prior general lien by the statute, nor an attaching creditor, who has a prior specific lien on the equity, to intervene and take precedence of the mortgagee, nor will it even enable the wife to acquire an inchoate right of dower as against the mortgagee. *Holbrook vs. Finney*, 4 Mass., 566 ; *Chickering vs. Lovejoy*, 13 id., 51, 55 ; *Clark vs. Munroe*, 14 id., 351 ; 5 Pike, 217 ; Supp't to U. S. Digest, p. 341. Nor will it enable the mechanic or material man, by his lien, to take precedence of the mortgagee. *Thaxter vs. Williams*, 14 Pick., 52. Even if *Rees* had not taken a mortgage, he would have had his equitable lien for purchase money, against all who had notice that he was not paid.

January 2.

*By the Court*, DIXON, C. J. This action was brought by *Rees*, the respondent, to foreclose a mortgage given by David P. Hull. The appellants were made parties defendant, as subsequent incumbrancers, and the complaint sought the foreclosure of their rights. The appellants answered, claiming mechanic's liens on the dwelling house erected by Hull on

the mortgaged property, and also on the right, title and interest of Hull in and to a portion of the mortgaged premises, not exceeding one acre in extent.

The facts which are not disputed are briefly these: *Rees* made a contract with Hull to convey to him certain lots in Milwaukee, at an agreed price of ten thousand dollars, and to execute a deed to Hull on the 1st of December, 1857. Hull, on his part, agreed to make valuable improvements on the property, in particular to erect a brick dwelling house on it, and to have the same enclosed within one year from the date of the contract, and on receiving a deed from *Rees*, to give him back a bond and mortgage for the purchase money. This contract was dated November 18th, 1856, and was duly recorded. Hull commenced the building under the contract, about August 1st, 1857, and the lien of these appellants grew out of materials furnished and work done for that building. Hull complied with the contract on his part, and on the 18th of November, 1857, *Rees* made a deed to Hull, and took back from Hull the bond and mortgage for the foreclosure of which this action is brought. The respondent claims that his mortgage lien is paramount. The appellants claim that their lien is prior to the lien of the mortgage; and that is the question here.

. It will be conceded by all that a lien for work and materials on a building, is a privilege derived entirely from statutory provision, and cannot be maintained beyond the extent of the grant of the act by which it is conferred. The determination, therefore, of the nature and extent of the appellants' lien for materials, depends on the true construction of the statute in force at the time they were furnished. If, as was insisted by the counsel, it gave them a complete and absolute lien on the building, independently of any title or interest in the land upon which it was erected, so that the owner was not a trespasser or disseizor, and then added or annexed to such absolute lien, a further lien upon such right, title and interest in the land, if any, as belonged to him, in that case I should say that so far as the building is concerned the lien of the appellants would be paramount, and entitled to protection. I must confess that at the argument I was

very strongly impressed with the idea that such was the proper construction. The language of the first section of the act (chapter 120, R. S., 1849), in my judgment, very clearly and decidedly supports that conclusion, and if I were now to determine the question upon that section alone, my opinion would remain the same. But another provision of the act, which was not particularly noticed or commented on at the bar, has led me to change my views. It is found in section 11, which prescribed the manner in which sales upon executions should be made, and the effect of conveyances under them. It was in these words: "and such officer shall give to the purchaser a deed of conveyance of the premises sold, which shall be valid and effectual to pass all the right, title and interest of the defendant in and to said premises absolutely, whether the same be in fee simple, for life or for years." Here we have the end and fruit of all the rights and privileges conferred by the act upon mechanics and material men. Purchasers under judgments in their favor, themselves if they became such, acquired the right, title and interest of the person owning the building, whether the same was held for life, in fee simple, or for years. They acquired just his rights—nothing more and nothing less. They succeeded to his title and represented his interest in the *premises* as a whole. They had no divided or several interest unless he had; but took the property, buildings and lands as one entire thing, and by one entire and indivisible title, whenever it was so held by him. If, under any circumstances, he was bound to treat the premises as an entirety, then were they also, for they but occupied his former position. This, it appears to me, is the plain and obvious import of the language. It leaves no room for distinguishing between the purchaser's ownership of the building and his ownership of the land with which it was connected. Both are spoken of as constituting one piece of property; the title as one title, and that such as the former owner had to the land. The plain inference is, that unless the title to the building had been previously separated by the act or agreement of competent parties, it was to follow and be governed by that of the land, and not that it could be subsequently

separated and take a new direction which the original owner had no right to give to it. The nature of the title which the purchaser was thus declared to acquire, its unity and indivisibility, are wholly incompatible with the absolute lien of the mechanic and material man upon the building itself, united with a lesser interest in the land on which it was erected, supposed to have been given by the first section. The inconsistency is so complete and radical that it undoes and destroys the force and effect which might otherwise be given to the first; and therefore I must conclude that the legislature did not intend by it to confer a lien which should operate more extensively than the judgment and execution which followed and were founded upon it. If we are correct in these views, the design was to give to the mechanic a lien from the commencement of the building equal in power and effect with the lien of another creditor who had obtained and docketed a judgment. The legislature gave him all the advantages of a judgment both as to the legal and equitable estate of the owner, but did not intend the lien should operate beyond the sphere where a judgment would be effectual.

Under this construction of the statute, the other question presented by the record is easily determined. The case stands as if the appellants had, at the time the building was commenced, been judgment creditors of Hull, whose judgments were a lien upon his equitable interest in the premises. If, having been such judgment creditors, their liens would have been prior to that of the respondent's mortgage, then they are now; but if not, then they are subsequent and must be postponed to the lien of the mortgage. The authorities clearly establish that Rees' interest in or lien upon the premises for unpaid purchase money was not diminished or impaired by his execution and delivery of a deed, when at the same time he received back a mortgage as security for the price. The settled doctrine in such cases is, that when property passes through a man, without his having paid for it, and with an understanding that he is at once to secure the payment by a mortgage or lien on the property itself, no right vests in him except that which is subject to such payment; that to the extent of the unpaid price, he is, in con-

templation of law, never the owner until it is paid. The delivery of the deed to the vendee, and his execution and delivery of the mortgage or other security for the unpaid purchase money, are but parts of the same transaction, done in pursuance of the same agreement, and have such operation only as will best promote the lawful intention of the parties. Their operation is contemporaneous and connected, and affords no opportunity for the liens of judgment or other creditors of the grantee to attach to the legal estate, before that of the grantor for the unpaid price. The doctrine is wholesome and just. No claim can be more equitable than that of the unpaid vendor to reimbursement out of the proceeds of the estate with which he has parted upon that express condition. Holding the estate, and having a right to retain the title until the payment of the purchase money shall be satisfactorily secured, why should not effect be given to the agreement between himself and the vendee in that respect? Certainly the creditors of the vendee ought not to complain, for without the agreement there would have been nothing upon which their rights could ever possibly have attached; and claiming a benefit from their debtor's purchase, by means of his contract with the vendor, they have no right to be placed in a better situation than the debtor himself. Their interest is based upon his and cannot in equity and justice go beyond it. *Holbrook vs. Finney*, 4 Mass., 566; *Chickering vs. Lovejoy*, 13 id., 51; *Clark vs. Munroe*, 14 id., 351; *Stow vs. Tifft*, 15 Johns., 458; *Love vs. Jones*, 4 Watts, 465.

In this case, the interest of the respondent as mortgagee of the premises, must be regarded as identical with his interest as vendor under the previous executory contract of sale, and therefore paramount to the lien or interest of the appellants. It is but a continuation of his original security under another form.

The judgment of the circuit court, being in accordance with these principles, is affirmed, with costs.

[NOTE, BY THE CHIEF JUSTICE.—See *Campbell and Pharo's Appeal*, 36 Pa. St. Rep., 247, in which the doctrines of the foregoing opinion are discussed and fully sustained.]