MRS. RENA BOGGS, APPELLANT, V. FRED H. MCEWEN ET AL., APPELLEES.

FILED SEPTEMBER 17, 1903.  No. 13,089.

Incumbrances: PRIORITIES.  One acting in good faith and without negligence, and for a valuable consideration, may safely deal with an apparently and actually unincumbered title, the subject of which is not in adverse possession.

APPEAL from the district court for Dixon county: GUY T. GRAVES, DISTRICT JUDGE.  *Reversed with instructions.*

*R. M. Dott, A. E. Hitchcock* and *F. A. McMaster,* for appellant.

*John J. McCarthy, W. D. McCarthy, Robert E. Evans* and *O. E. Martin, contra.*

AMES, C.

The facts disclosed by the record upon this appeal are substantially undisputed. So far as their recitation is necessary for the decision of the controversy they are as follows: On and prior to the first day of April, 1900, Fred H. McEwen was, and had been, occupying a dwelling house and lot in the village of Emerson in this state as the tenant of certain persons named Merten who were the owners of them in fact and of record. For some two months prior to the date mentioned, he had been negotiating for the purchase of the property, and also, it would seem, to borrow the money with which to pay the purchase price, from his sister, the appellant Mrs. Rena Boggs, who was at Mt. Vernon, South Dakota, where she resided.

48

At about the date mentioned, he appears to have become convinced that he would be able to perfect the arrangement, and to have begun to procure labor and material from the other parties to the suit, who are mechanics' lienholders, for the reparation of the building. This conduct was begun and continued within the knowledge, but without the authority, direction or privity of the Mertens. The agreement between him and the Mertens for the sale of the premises was never reduced to writing, and amounted to no more than an oral consent by the latter to sell and convey upon being paid a certain purchase price in cash.

On or about the 8th day of May, following, one George H. Hasse, a banker at Emerson, received through the mail a certificate of deposit issued by a bank at Mt. Vernon, for the sum of $1,080.60, payable to the order of Mr. Boggs at the expiration of about a month thereafter, and indorsed by her with a direction to the effect that the proceeds thereof should not be used or drawn or paid to the Mertens until they should have conveyed the house and lot to McEwen. Upon receipt of the certificate, Hasse notified McEwen and the Mertens of the fact, and the latter executed a deed of the premises bearing the last named date and conveying the premises to McEwen, and delivered it to Hasse to await the maturity of the certificate and the consummation of the transaction by the full payment of the purchase price to them. On the 26th of May, shortly before the certificate fell due, Hasse sent it to Mt. Vernon for collection and within a few days thereafter received, also by mail, payment of it. On the first day of June, the purchase price was paid to the Mertens, or placed to their credit in the Emerson bank, pursuant to their previous instructions, and McEwen executed and delivered to Hasse his note and a mortgage on the house and lot payable to Mrs. Boggs for the amount of money loaned by her, and received the deed for the premises then in the possession of Hasse. The deed and mortgage were then sent through the mails by Hasse to the county seat, Ponca, where they were filed for record in the proper office, as appears by in-

dorsements thereon, on the 5th day of June, and spread at large upon the record on the 8th day of that month. On the last named day both instruments were returned to Hasse and the note and mortgage, together with a letter giving an account of the transaction, sent by him, through the mail, to Mrs. Boggs. During all this time and for some time afterwards, the furnishing of labor and materials and the reparation of the house were in progress, but it is not claimed that Mrs. Boggs had any knowledge or suspicion of any of such matters, or that any of the parties to the transaction were guilty of any deceit or fraud actual or constructive.

This is an action by Mrs. Boggs to foreclose the mortgage which is long since past due and wholly unpaid McEwen and his wife, Olma, were made parties defendant and made default and are not now complaining of the result of the suit. The other defendants are laborers and material men, who filed cross-petitions claiming mechanics' liens upon the premises. The court found that certain of the liens are prior and superior to the lien of the mortgage and rendered a decree accordingly. The plaintiff appeals. It is not claimed, and there is no evidence in the record that would tend to support a claim, that the house and lot were subject to any mechanic's lien so long as the title and ownership thereof remained in the Mertens. The delivery of the deed and of the mortgage were plainly intended to be and were, simultaneous acts, and they both found their way to the public records at the same instant, and as soon as was reasonably convenient after they became effective by delivery, which was not unnecessarily delayed. Until that time the material men dealt with McEwen with at least constructively full knowledge that he was not the owner of or possessed of any legal estate or interest in the property. On the 5th day of June they were advised by the public records that the title had been recently conveyed to McEwen burdened with the lien of the plaintiff's mortgage. It is evident that the cross-petitioners knew as a matter of fact, at the time they begun

furnishing the material for which they claim liens, that the house and lot belonged to the Mertens who acquired it as heirs at law of one William Merten, who deceased not long previously, and some of them testify that McEwen told them he had bought the property of the heirs and had a clear title to it, and that William Merten, Junior, one of the heirs who was employed by McEwen as a carpenter, told them that the heirs had sold the property to the latter, but it is not claimed that either Merten or McEwen was the agent or representative of Mrs. Boggs in any sense, neither is it pretended that Hasse was such an agent, except for the mere purpose of collecting the certificate of deposit, paying the purchase price and seeing to the execution and delivery of the deed and mortgage and the making of them of record. If he knew of the progress of the building operations, which he probably did, though there is no direct evidence to that effect, it was a fact not relevant to the nature of his employment and not one which it was his duty to make known to his principal. There were no contracts, oral or written, for the furnishing of the labor or materials for which recovery is sought, the former of which seems to have been done by the day or hour, and the latter to have been delivered as ordered from time to time, upon ordinary parcels accounts according to the custom of the retail dealers. By far the larger part, apparently nearly the whole, of each of the claims against McEwen, thus accrued after the deed and mortgage had been made of record, and none of the cross-complainants testifies to having even so much as heard of the existence of either of these instruments until after the beginning of this action. That the cross-petitioners were grossly negligent in the conduct of their business goes without saying, but that the plaintiff was guilty of any fault in that respect, or omitted any precaution which ordinarily prudent persons observe under similar circumstances is not pretended. On the contrary she took unusual care and pains to be assured that the unincumbered title of the Mertens should not pass from them, until it should be charged

with the lien of her mortgage. Under such circumstances, who has the prior or superior right? It seems to us that the question is its own answer. The case was submitted to us, without oral argument, but upon largely voluminous briefs, containing a wealth of citations by both parties, but we do not find referred to among them any authority in point, and we are not aware that there is any such, but we think the case falls within the principle of the decisions of this court in *Henry & Coatsworth Co. v. Fisherdick,* 37 Neb. 207; *Hoagland v. Lowe,* 39 Neb. 397; *Fuller, Smith & Fuller v. Pauley,* 48 Neb. 138; *Bradford v. Anderson,* 60 Neb. 368.

One acting in good faith and without negligence and for a valuable consideration, may safely deal with an apparently and actually unincumbered title, the subject of which is not in adverse possession. This proposition, which accurately describes the attitude of the plaintiff in this transaction, we have never heard disputed. No one contests the validity of the liens, except the plaintiff, and as she is entitled to priority over all of them she is not in a position so to do.

It is recommended that the judgment of the district court be reversed and the cause remanded with instructions to enter a decree awarding the plaintiff a first lien for the amount of her mortgage debt and adjusting the other liens accordingly.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded with instructions to enter a decree awarding the plaintiff a first lien for the amount of her mortgage debt and adjusting the other liens accordingly.

REVERSED