THE FRANKLIN SOCIETY FOR HOME BUILDING AND SAVINGS

*v.*

JOHN T. THORNTON et al.

[Decided September 6th, 1915.]

1. On a bill to foreclose a mortgage standing partly as a purchase-money mortgage and partly to secure a loan advanced and to be advanced, with answer by the mortgagor alleging that nothing was due on the mortgage by reason of an extension of payment, and similar answers by parties claiming mechanics' liens for labor and material furnished the defendant mortgagor prior to the mortgage, the litigation called for a final hearing before a judge of the chancery court, with appeal directly to the court of errors and appeals, and the cause might be referred to a vice-chancellor for a final hearing, to an advisory master, or to a master of the court pursuant to Chancery act (*P. L. 1902 p. 544 § 104*), and was not properly referred, by consent of parties, to a special master to report the amounts, if any, due the mortgagor and the lienors, and the order and priority of their claims, with the right to except to his report and review of his determination as to the priority of the mortgage.

2. Such case was one not within operation of rule 29, which provides for a reference of a foreclosure suit to a master when no answer sets up any defence or question except such as in the opinion of the court may be properly referred to a master.

3. On such bill it would not be proper for the vice-chancellor to disturb the finding of the master, filed without opinion, unless he plainly

erred, where the parties might obtain a review of the decision of the chancery court, rendered through the special master in the court of errors and appeals.

4. Under Mechanics' Lien law (*P. L. 1898 p. 542 § 14*), providing that under advance-money mortgages the building erected on the land shall be liable for the payment of any debt for labor performed or material furnished in its erection, prior to the lien of such mortgage, and section 15, providing that every mortgage on the land shall have priority over any claim under the Lien act to the extent of the money actually advanced by the mortgagee and used in the erection of buildings on the land, a mortgage standing partly as a purchase-money mortgage and partly as a mortgage to secure a loan to the purchaser and builder was entitled to a priority over the liens of parties performing work and furnishing material to the builder.

5. The Mechanics' Lien law is to be construed strictly, so far as it established an encumbrance upon the property of one person for another person's debt, and where a doubt remains as to whether a mechanics' lien is prior to a purchase-money mortgage, also standing as security for money loaned for the erection of a building on the mortgaged land, it should be solved in favor of the mortgage.

On exceptions to a master's report.

*Mr. Nathan H. Pendergast,* for the complainant.

*Mr. John W. De Yoe,* for the defendant Irvy Myers, exceptant.

*Mr. Peter W. Stagg,* for the defendants P. M. Valle & Company, exceptants.

STEVENSON, V. C.

This cause, although coming before the court technically upon exceptions to a master's report, made in pursuance of an interlocutory order of reference substantially in the form commonly employed in foreclosure suits, in fact, presents an instance of a rehearing of important litigations set forth in the pleadings which already have been heard and decided by a judge of this court of the parties' own choosing. The practice which has been followed in this case, in my judgment, is not to be commended—in fact, should be discouraged:

Two foreclosure suits have been tried together, the questions presented being the same, although separate final decrees will be entered. The decision of the matters presented in either case involves a corresponding decision in the other case.

The bill of complaint in the cause which will be particularly considered, sets forth a bond and mortgage upon real estate to secure $4,600, dated October 6th, 1911. The mortgage was executed by the defendant John T. Thornton and his wife to the complainant, and recites that at its date the said Thornton was justly indebted to the complainant in the sum of $4,600, and provides for the payment of such debt in monthly installments of $46, until the whole of the principal and interest should be paid. As a matter of fact, when the bond and mortgage were executed and delivered, October 6th, 1911, the sum of $4,600 was not due from Thornton to the complainant; only a portion of the money secured, or intended to be secured, by the mortgage was then paid over to the mortgagor.

The transactions between the parties which led up to the execution and delivery of the bond and mortgage were as follows: On the 9th day of May, 1911, the complainant and the defendant Thornton entered into a contract under seal, whereby the complainant, in consideration of the sum of $1,000, agreed to convey to Thornton on or before the 1st day of July, 1911, a certain lot of land laid down on a map entitled, "Map of property belonging to the Franklin Society, Haworth, N. J., section 3." The defendant Thornton expressly agreed to pay the consideration of the conveyance in two installments, namely, $5 on execution of the agreement, and $995 in cash on delivery of the deed which was to be effected "on or before the 1st day of July, 1911."

By a written paper, entitled "Loan Application," bearing date May 10th, 1911, the defendant Thornton applied to the complainant for a loan of $4,600. This loan application appears to have been made upon a blank or form employed by the complainant in its business. The form does not seem to have been fully filled out, important details being lacking.

The land offered as security consisted of a lot one hundred by ninety-five, being the same land subsequently conveyed by the

complainant to Thornton, and mortgaged back by Thornton to the complainant on October 6th, 1911, as above stated. The value of the land is given as $1,000. The value of the buildings is given as $4,800, but the questions in the application calling for the dimensions and character of the building or buildings appear to be left unanswered. It may be inferred that the parties had agreed upon the plans and specifications of the building or buildings to be erected.

On the 23d day of May, 1911, the complainant and Thornton entered into a further agreement based upon Thornton's application. This instrument recites that the borrower, Thornton, "is the owner, or is about to become the owner," of the land above mentioned, and

"has applied to the lender, the complainant, for a loan of $4,600, to aid the borrower in the erection on said land of a two-story and attic frame dwelling, from plans and specifications heretofore mutually agreed upon and filed by said borrower with his application for said loan."

The complainant expressly accepts the defendant's application and agrees to make, and the borrower agrees to take, the loan so applied for. The borrower, Thornton, further agrees to proceed continuously with the erection of the building, so that the same will be completely finished and ready for occupancy on the 1st day of September, 1911. Upon Thornton's so proceeding with the erection of the building and keeping his agreements, the complainant agrees to lend $4,600, to be advanced by three installments, the first two of $1,533 each, and the third of $1,534. The first installment was to be advanced at a certain stage of the construction of the building; the second at a more advanced stage, and the last when the work was completely finished.

The parties to these instruments, the complainant and defendant Thornton, utterly disregarded some of the most important agreements which they had formally entered into as above set forth. The defendant Thornton, who was engaged in erecting a number of houses, appears to have proceeded forthwith, or shortly after the execution of the agreements of May 9th, 1911, to erect the contemplated frame dwelling-house according to the plans and specifications agreed upon, and for that purpose and

in that work is alleged to have incurred the debts for labor and material for which the liens of the defendants Irvy Myers and P. M. Valle & Company, respectively, were subsequently filed. At the time this material was furnished the defendants, the lienors, had full notice that the land upon which the defendant Thornton was erecting the building was vested in the complainant as owner. They also knew, or could have learned by inquiry, that the complainant was not bound to make the mortgage loan, which would enable Thornton to pay for the building, until Thornton had paid the complainant $995 in cash and taken his deed. These lienors gave credit to the defendant Thornton personally, and if he had not only failed to pay the $995 to the complainant, but had failed to obtain title to the land, a very different case would not have been presented between these lienors and the complainant as legal owner of the land in which a number of questions would have been raised which need not be considered. On October 6th, 1911, the title to the land remained vested legally in the complainant. It may be inferred that the building had to a very considerable extent been erected by Thornton. It does not appear that the parties up to this time had made any change in their contract relations. The defendant Thornton had broken his agreement to pay the $995 and take title to the land on or before July 1st, 1911. No explanation has been offered of this default for three months.

The parties, however, met on October 6th, or 7th, 1911, and thereupon the whole deal between them was in a most essential matter vitally changed. The complainant executed and delivered to the defendant Thornton, a warranty deed with full covenants, conveying the land in question, subject to certain specified restrictions, the consideration as recited being one dollar "and other good and valuable consideration." At the same time the defendant Thornton executed and delivered to the complainant the bond and mortgage for $4,600 above described. Thornton, however, did not pay the $995 in cash, which was the balance due of the actual purchase price of the land, but this amount was deducted from the first installment of the mortgage loan ($1,533), which the complainant then paid in pursuance of the agreements between the parties as they were then and there

modified and altered by mutual consent. The complainant made out two checks to the order of Thornton, one for $995 and the other for $538, and thereupon Thornton endorsed the check for $995 and delivered it back to the complainant. The result of this transaction was that in fact the total loan which the complainant agreed to make to Thornton was reduced from $4,600 to $3,605, such reduction being effected by the first installment being made $538 instead of $1,533. The check for $995, of course, was a mere form, no money in fact being paid. The entire transaction amounted to this, that the mortgage instead of being a mortgage to secure an advance then made, and other future advances agreed upon, stood as a purchase-money mortgage to the extent of $995, and as a mortgage to secure the reduced loan of $5,605, a portion of which ($538) was then advanced and the remaining portion of which was thereafter to be advanced in accordance with the agreement of the parties.

The defendant Thornton, after October 6th, 1911, proceeded with the work of completing the building, and the complainant made further advances, aggregating $1,533. The full amount of the mortgage loan as reduced by agreement ($3,605) was not, however, advanced. Thornton failed to complete the building. The total amount advanced by the complainant was established without contention at the sum of $2,171, which amount, with the unpaid purchase-money ($995), makes the mortgage stand as an undisputed security for $3,166 and certain small amounts paid by the complainant for insurance and taxes.

(1) The pleadings in this case present a variety of important and novel questions arising from the obscure terms of this extraordinary specimen of American class legislation, called "the Mechanics' Lien law." Answers to the foreclosure bill were filed by the defendant Thornton, who was the builder and owner, and by the defendants Irvy Myers and P. M. Valle & Company, who are two lienors who present the same claim—the same case for the consideration of the court. The sole question to be determined is whether the complainant's mortgage or these mechanics' liens are to be accorded priority.

The case as it stood when the order of reference was made, and as it stood before the master, embraced a number of im-

portant litigations. The defendant Thornton, the mortgagor, set up in his answer and offered proof before the master, to show that nothing was due upon the mortgage—that subsequent to the execution of the mortgage a new agreement had been made extending the terms of payment. The defendants, the lienors, among other matters, set up this same defence that the mortgagor had not made default on account of the extension agreement which had been made, and also that the complainant was a foreign corporation not entitled to transact business in New Jersey. The lienors in their answers claimed priority to the complainant's mortgage.

It is evident that this litigation, as presented to the court of chancery by these pleadings, was not the proper subject-matter of a reference to a master under the ancient established practice of courts of equity in England and this country. It is also evident that the case was not one within the operation of rule 29 promulgated by Chancellor Runyon in 1879, which provides for a reference of a foreclosure suit to a master when no answer sets up any defence or question except such as in the opinion of the court may be properly referred to a master. The case presented by the pleadings and tried before the master was one which under our practice called for a final hearing before a judge of this court, from whose decision an appeal would lie directly to the court of errors and appeals. The cause might have been referred, and in the usual course of business would have been referred, to a vice-chancellor for a final hearing; it might have been referred to an advisory master; it might have been referred by the chancellor to a master of the court, who was a counselor-at-law of five years' standing, pursuant to section 104 of the Chancery act. In case a reference of the cause had been made in either of the above-mentioned methods, the decision of the judge so appointed by the order of reference would have been final so far as the court of chancery is concerned. Any party dissatisfied with the decision so obtained in this court, in the absence of special circumstances affording grounds for a rehearing, would have been obliged to take an appeal to the court of last resort in order to obtain a reconsideration and review of his case.

The complainant and the answering defendants in this cause did not follow the established practice as above set forth. They consented to an order, which of course was signed by the chancellor without any knowledge of the nature of the litigation presented by the pleadings, by which order it was referred to "one of the special masters of this court to ascertain and report the amount due, if anything, to the said complainant" upon its mortgage, and also the amount due, if anything, to the defendants upon their respective claims, and to report accordingly, and also to ascertain and report the order and priority of the mortgage and claims respectively, &c.

The question of "order and priority" referred to the master in this case is not the simple question of that nature which is so often referred to a master in foreclosure suits, where there is a series of encumbrances. The question of priority in this case was the important issue raised by the pleadings, and its determination involved an elaborate study of several sections of the Mechanics' Lien law, and constituted at the start the principal controversy between the parties, and subsequently stood as the sole controversy.

According to the well-settled practice of this court, I think it is plain that if the attention of the court had been called to the character of the litigation between the parties, no order of reference to a master to whose report exceptions could be filed, would have been made; the parties, if they agreed upon the judge who was to hear their cause, would have been required to take their order of reference under section 104, so that the decision of the master, like the decision of a vice-chancellor, would have been final so far as the court of chancery was concerned.

The whole cause was tried before the special master, the equity judge whom the parties selected, under the terms of the order which directed the master to ascertain and report the amount, "if anything," due to the complainant on its mortgage. The validity of the mortgage might have been contested under the allegations of the lienors' answers.

The mortgagor, Thornton, actually put in his defence, set up his answer, that there was nothing due on the mortgage because a supplementary agreement had been made extending the mort-

gage. Testimony was taken before the master on five different days, which occupies three hundred and five printed pages. A stenographer took down and reported the testimony and proceedings before the master. The trial was conducted in all respects as if it were before a vice-chancellor or advisory master. The cause was then argued and the master made his report in the usual form, giving priority to the complainant's mortgage, and stating the amount due on all the encumbrances. The master, however, in accordance with the practice, filed no opinion exhibiting his conclusions upon the points which had been argued before him, and upon the determination of which the decision of the whole litigation depended.

Exceptions were filed by the lienors, Myers and Valle & Company, which present to this court for review the single question, complex and difficult, decided by the master, as to the priority of the complainant's mortgage to the mechanics' liens of the exceptants. The defendant Thornton filed no exceptions and evidently abandoned his defence.

Without the aid of any opinion from the master, the equity judge, who was obliged to consider this case with care after hearing elaborate arguments, this court is now asked to determine a number of difficult questions in regard to the construction of the Mechanics' Lien law of New Jersey, all of which questions were argued before and decided by the special master whom the parties selected as their judge.

In my judgment, it would not be right in this case to disturb the finding of the master unless it is plain to the court that he erred. The parties in this case have had their day in court— in the court of chancery; they have tried their case to a finish before a judge of this court upon whom they agreed. They may obtain a review of the decision which this court has already rendered through the special master in the court of errors and appeals.

(2) The question of priority decided by the master involves the consideration and construction of two or three of the most obscure and badly-drawn sections of our Mechanics' Lien law, viz., sections 14 and 15. Our reports indicate that the construction of our Mechanics' Lien law is a matter of great difficulty,

the final interpretation frequently being reached by a decision of the court of errors and appeals, reversing the court of chancery by a divided court.

Without undertaking to analyze and discuss minutely the provisions of the above-mentioned sections of the Mechanics' Lien law, I shall, for the purpose of this case, merely state my conclusion that the view is tenable, that in this case the complainant's mortgage comes within the provisions of section 14 and should therefore be considered as a purchase-money mortgage taken for a portion of the price of the land sold, and also as security for money, "in excess of the purchase-money," advanced or to be advanced by the mortgagee for the purpose of enabling the mortgagor to erect a building upon the land. It follows that the complainant's mortgage is entitled to the priority over the liens which the master accorded to it.

(3) It may be that the master also found that the liens of the defendants were not valid as against the mortgage of the complainant because of the failure of the proofs to show that the material and labor were "furnished for the erection and construction" of the building covered by the mortgage. The mortgagor, Thornton, builder and owner, was erecting five buildings on different lots at the same time, and he appears to have purchased material for all of them. The defendant Myers stated to a witness that Thornton had requested him "to furnish him lumber for five houses which Mr. Thornton was to build at Haworth."

No apportionment of Mr. Myers' charges for material furnished for the five buildings was attempted. His lien was filed upon the theory that it embraced material furnished for this particular building covered by the complainant's mortgage. The extent of this particular claim seems to have been partly, at least, determined by a subsequent measurement or estimation of the amount of the material furnished which actually went into the building covered by the complainant's mortgage.

It is possible that the master might have found that the lien of the defendant (Myers) for material was not valid as against the complainant's mortgage, while he came to a different conclusion in regard to the lien of the defendants Valle & Company,

which was founded upon a contract for furnishing labor and materials for mason work, &c. A review of the master's decision as to the validity of these liens as against the complainant's mortgage, if the master made any decision on that subject, could not be satisfactorily made without an examination of all the exhibits, some of which do not appear in the printed book. Under the circumstances, I do not find it necessary to raise or determine this question as to the validity of these liens, the same not having been directly raised in the pleadings.

(4) The Mechanics' Lien law is to be construed strictly, so far as it establishes an encumbrance upon the property of one person for another person's debt. If, when the whole confused mass of crude and loosely-drawn legislation is carefully considered, a doubt remains as to whether a mechanics' lien is prior to a purchase-money mortgage, which also stands as security for money advanced in good faith for the erection of a building on the mortgaged land, such doubt, I think, should be solved in favor of the mortgage.

(5) For the reasons indicated above, my conclusion is that the exceptions to the master's report should be overruled, and that decrees in favor of the complainant should be made in accordance with that report.