Argued March 4; affirmed April 1; rehearing denied May 1; motion to recall mandate denied July 1, 1930

## PACIFIC SPRUCE CORPORATION *v.* OREGON PORTLAND CEMENT CO. ET AL.

(286 P. 520, 289 P. 489)

*Arthur Clarke* of Corvallis (G. B. McCluskey, W. H. Waterbury, English & Krause, and R. M. Turner, all of Toledo, and Allan G. Carson of Corvallis, on the brief) for appellant Pacific Spruce Corporation.

*L. E. Schmitt* and *B. A. Ewers,* both of Portland, for appellant Zimmerman.

*Arthur H. Lewis* of Portland (Lewis, Lewis & Finnigan of Portland, on the brief) for appellants Gray and Kelly.

*William C. Palmer* of Portland for appellant Oregon Portland Cement Co.

*Jay L. Lewis* of Corvallis (Yates & Lewis of Corvallis, on the brief) for respondent Woodcock.

RAND, J. This is a suit to foreclose certain mechanics' liens for labor and material furnished in the construction of a building. The case was submitted upon an agreed statement of facts which presented the sole question of whether the liens should be entitled to priority of payment over the lien of a certain mortgage upon the land. As stipulated, it was agreed that on March 20, 1928, M. E. Woodcock, the mortgagee, executed and delivered to the Newport Hotel company a warranty deed conveying a certain parcel of land in the city of Newport, and that simultaneously therewith the Newport Hotel company executed and delivered to him a mortgage upon the land for $2,000, the purchase price thereof. It was also stipulated that the deed and mortgage were both duly recorded on March 22, two days after their execution and delivery, and that on March 19, the day before the deed and mortgage were executed, the Newport Hotel company, without Woodcock's knowledge, commenced to construct a building on said land. In respect to Woodcock's knowledge, it was stipulated that he had no notice or knowledge of the work having been commenced on the building or of material having been furnished therefor until March 27, five days after his mortgage had been recorded. The stipulation itself and the record are wholly silent upon the question of what, if any, understanding or agreement existed between Woodcock and the hotel company prior to the execution of the deed and mortgage. Under these facts as so stipulated, the learned circuit judge entered a decree holding that as to the

land on which the building had been constructed the lien of the mortgage should have priority over the liens sued on and that as to the building the liens should have priority over the mortgage, and directing that the building should be sold separately from the land and that the purchaser should have the right to remove the same in accordance with the provisions of § 10193, Or. L. From this decision the lien claimants have appealed, contending that they are entitled to a preference over the mortgage not only upon the building but also upon the land.

The question of whether the lien of a duly recorded purchase price mortgage which was executed simultaneously with a deed conveying the mortgaged land is entitled to priority of payment, not as to the building but as to the land itself, over liens for labor and material furnished to the vendee for a building upon which work had been commenced by the vendee before acquiring title to the land is a question which has not heretofore been decided by this court under the statute as it now exists. The question is one which must be determined from the provisions of our own statute.

Or. L., § 10191, among other things, provides that persons performing labor or furnishing material "to be used in the construction, alteration or repair, * * * of any building, * * * shall have a lien upon the same for the work or labor done or transportation or material furnished at the instance of the owner of the building or other improvement, or his agent." Under this clause, if the labor was performed or the material furnished at the instance of the owner of the building, or his agent, the right to a lien upon the building exists, otherwise not, for the statute expressly limits the right to a lien to cases where the labor or material was furnished at the instance of the owner of the

building, or the agent of such owner. This is the only section which confers the right to a lien and defines the cases in which a lien may be acquired, but whether the lien so acquired shall be a lien upon the land upon which the building is constructed must be determined by the other sections of the act.

■ Or. L., § 10192, among other things, provides that the land on which the building is constructed shall be subject to the lien, "if, at the time the work was commenced * * * the said land belonging to the person who caused said building or other improvement to be constructed, altered, or repaired; but if such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to such lien."

Or. L., § 10194, provides: "Every building * * * constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction * * * give notice that he will not be responsible for the same, by posting, etc." The clear import of the language of the last two sections referred to is that a lien on the building will not attach to the land unless the owner of the building is also the owner of the land or of some interest therein, and then only to the extent of his interest, unless the owner of the land, having knowledge of the construction, fails to give the notice as provided by the statute that he will not be responsible.

■ Under the stipulation it was agreed that the Newport Hotel company, the owner of the building, was not the owner of the land or of any estate or interest therein at the time the work was commenced and it was also agreed that the work was commenced without the knowledge of Woodcock, who was at that time the owner of the land. The stipulation is that Woodcock had no notice or knowledge until March 27, which was seven days after the deed and mortgage had been executed and five days after the mortgage had been recorded, and that the deed and mortgage had been executed and delivered simultaneously. Hence, under the provisions of the statute referred to the liens in question did not and could not attach to the land until the delivery of Woodcock's deed, when the owner of the building took the land subject to the incumbrance of Woodcock's mortgage. Under this state of facts, the first moment of time when the liens upon the building could attach to the land was when the Newport Hotel company acquired title to the land from Woodcock, because prior to that time it had no interest in the land and when it did acquire title it took the title charged with the lien of the mortgage. It is clear that the statute did not intend to give a lien upon the land except in case of the owner's neglect to give the notice referred to, unless the owner of the building was the owner of some interest in the land and then only to the extent of his interest therein.

■ But the lien claimants contend that, by virtue of the provisions of Or. L., § 10193, these liens are entitled to priority over the mortgage. That section provides that: "A lien created by this act upon any parcel of land shall be preferred to any lien, mortgage, or other incumbrance which may have attached to said land subsequent to the time when the building or other improve-

ment was commenced,    *   *   *    also to any lien, mortgage, or other incumbrance which was unrecorded at the time when said building, structure, or other improvement was commenced,   *   *   *    and all liens created by this act upon any building or other improvement shall be preferred to all prior liens, mortgages, or other incumbrances upon the land upon which said building or other improvement shall have been constructed   *   *   *    and in enforcing such lien, such building or other improvement may be sold separately from said land; and when so sold, the purchaser may remove the same, etc." Under this section, as held in *Cooper Mfg. Co. v. Delahunt*, 36 Or. 402 (51 P. 649, 60 P. 1), liens for labor or material relate back to the time when the construction of the building was commenced. Hence, these liens, in so far as they affect the building, relate back to March 19, when work was commenced, but in so far as the right of a lien against the land is concerned these liens, under the provisions of the statute to which we have referred, can only relate back to the first moment of time when the Newport Hotel company acquired a lienable interest in the land, for that is the first moment of time when the statute authorizes a lien of this nature to become a lien upon the land in the absence of the owner's failure to give notice that he will not be responsible for the labor or material.

       The other provisions of Or. L., § 10193, to which we have just called attention, create a more difficult question. Literally, the statute provides that liens of this class shall be preferred over any lien, incumbrance or mortgage which shall attach to the land subsequent to the time when the building was commenced, or which was unrecorded at that time. In construing this section, it must be remembered that these provisions are but parts of an entire act, all relating to the same matter,

and since they are in pari materia they must be construed together and effect be given to the statute as a whole. The primary purpose of the statute was to secure and protect laborers and materialmen for the labor and material furnished in the construction of buildings. To effect that purpose, the statute should be liberally construed so as to afford to such persons the greatest protection compatible with justice and equity. But in so far as the statute may subject the owner of the land to the payment of another person's debts for which he is in no wise responsible and deprive him of his property without any fault upon his part, the statute should be strictly construed in order to prevent the taking of his property without due process of law, and where as here the question is whether mechanics' liens are prior to a purchase price mortgage, under the facts and circumstances stipulated in this case, if there is any doubt as to the meaning of the statute, we think it should be solved in favor of the mortgage. *Franklin Society, etc. v. Thornton,* 85 N. J. Eq. 37 (95 Atl. 374).

Under a statute containing the same provisions as our statute, although couched in somewhat different language, it was held in *Russell v. Grant,* 122 Mo. 161 (26 S. W. 958, 43 Am. St. Rep. 563), that a purchase price mortgage which attached to the land subsequent to the commencement of the building will not be postponed or made subject to liens of this character. The statute there read:

"The lien for work and materials as aforesaid shall be preferred to all other encumbrances which may be attached to or upon such buildings, bridges, or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements": Rev. Stats. 1889, § 6711,

and also it contained a provision that liens shall attach "to the extent and only to the extent of all the right,

title, and interest owned therein by the owner.'' In disposing of the contention that the liens should be given priority over a purchase price mortgage, the court said:

"If he [the purchaser] purchase property and give a mortgage for the purchase money, the deed which he receives and the mortgage which he gives, constitute but one transaction, and the lien of the mortgage for the purchase money cannot be displaced or postponed by a mechanic's lien which attached simultaneously with the acquisition of title by the mortgagor: 1 Jones on Mortgages, § 158; *U. S. v. New Orleans R. R. Co.,* 12 Wall. 362; *Steininger v. Raeman,* 28 Mo. App. 594.''

In *Rees v. Ludington,* 13 Wis. 276 (80 Am. Dec. 741), the question was whether mechanics' liens should have priority over a purchase price mortgage. In disposing of that question, Dixon, C. J., said:

"* * * The case stands as if the appellants had, at the time the building was commenced, been judgment creditors of Hull, whose judgments were a lien upon his equitable interest in the premises. If, having been such judgment creditors, their liens would have been prior to that of the respondent's mortgage, then they are now; but if not, then they are subsequently and must be postponed to the lien of the mortgage. The authorities clearly establish that Rees' interest in or lien upon the premises for unpaid purchase money was not diminished or impaired by his execution and delivery of a deed, when at the same time he received back a mortgage as security for the price. The settled doctrine in such cases is, that when property passes through a man, without his having paid for it, and with an understanding that he is at once to secure the payment by a mortgage or lien on the property itself, no right vests in him except that which is subject to such payment; that to the extent of the unpaid price, he is, in contemplation of law, never the owner until it is paid. The delivery of the deed to the vendee, and his execution and delivery of the mortgage or other security for the

unpaid purchase money, are but parts of the same transaction, done in pursuance of the same agreement, and have such operation only as will best promote the lawful intention of the parties. Their operation is contemporaneous and connected, and affords no opportunity for the liens of judgment or other creditors of the grantee to attach to the legal estate, before that of the grantor for the unpaid price. The doctrine is wholesome and just. No claim can be more equitable than that of the unpaid vendor to reimbursement out of the proceeds of the estate with which he has parted upon that express condition. Holding the estate, and having a right to retain the title until the payment of the purchase money shall be satisfactorily secured, why should not effect be given to the agreement between himself and the vendee in that respect? Certainly the creditors of the vendee ought not to complain, for without the agreement there would have been nothing upon which their rights could ever possibly have attached; and claiming a benefit from their debtor's purchase, by means of his contract with the vendor, they have no right to be placed in a better situation than the debtor himself. Their interest is based upon his and cannot in equity and justice go beyond it: (citing authorities)."

Again, in *Thorpe Brothers v. Durbon,* 45 Iowa 192, it was held that where the vendee of real property under a verbal agreement of purchase had erected a building to which a mechanics' lien had attached and subsequently thereto he received a deed and executed a mortgage for the purchase price, the lien of the mortgage was paramount to the mechanics' lien. Holding to the same effect is *Boggs v. McEwen,* 69 Neb. 705 (96 N. W. 666); *North Dakota Lbr. Co. v. Haney,* 23 N. D. 504 (137 N. W. 411); *Moody v. Tschabold,* 52 Minn. 51 (53 N. W. 1023); *Virgin v. Brubaker,* 4 Nev. 31. Also see note, Ann. Cas. 1916B, p. 635, collecting cases from all states.

Although this question has never been directly passed upon by this court since the present statute has been in force, the principles which we think ought to be applied in favor of this purchase price mortgage were stated in *Holmes v. Ferguson*, 1 Or. 220. In that case there had been a conveyance of real property and a mortgage taken for part of the purchase money. Subsequently, the first grantee conveyed the property subject to the mortgage to the Willamette Falls, etc., company, which mortgage the last named grantee assumed and agreed to pay as recited in its deed. The first deed was filed for record in May, 1853, but neither the last deed nor the mortgage itself was filed until the following year. Liens were claimed for work done and material furnished upon a building which was commenced to be constructed in May, 1853, the year before the mortgage had been recorded. The question was whether the liens or the mortgage should have priority. In disposing of the question, the court, speaking through Williams, C. J., said:

"Many of the defendants are judgment creditors of the said 'company,' with mechanics' liens; and they aver that, in the month of May, 1853, said 'company' commenced the erection of a warehouse and sawmill upon said premises; and that thereafter, but before plaintiff's mortgage was filed for record, they were employed by said 'company' to furnish materials for, and perform labor upon, said buildings: wherefore, they say, that their liens are paramount, and ought to be preferred to the lien of said mortgage. This position is clearly untenable, upon principle and authority.

"If defendants gave credit to the 'company,' on account of their interest in said premises, or looked to a lien thereon as security for their demands, then they must have known, or were bound to know, what that interest or right was upon which they placed such reliance. Reference to the books of registration showed

the title to be in Ferguson; so that defendants were not misled, and induced to give credit to the 'company', because the public records indicated that they were the owners, and entitled to incumber or dispose of the property. \* \* \*''

While the court in that case was not construing a statute similar to the one involved here, yet the decision is authoritative upon the principles which would govern if there was no statute and the decision is persuasive upon the question of whether the statute, taking all of its provisions into consideration, ever intended to override the principles announced in that case.

■ In *Ladd & Tilton v. Mitchell*, 93 Or. 668 (184 P. 282, 6 A. L. R. 1420), this court announced the general rule:

''that a mortgage on land executed by the purchaser of the land contemporaneously with the acquirement of the legal title thereto, or afterwards, but as a part of the same transaction, is a purchase-money mortgage, and entitled to preference as such over all other claims or liens arising through the mortgagor, though they are prior in point of time; and this is true without reference to whether the mortgage was executed to the vendor or to a third person.''

While there were no mechanics' liens involved in that case, the rule as announced was broad enough to include cases in which such liens would be involved.

In 40 C. J., p. 62, section 27, the rule is announced that ''a mechanic's lien can not attach to the equitable lien of a vendor for the purchase money when he has conveyed the whole title.''

■ This case was tried in the lower court before the Honorable J. W. Hamilton, a circuit judge of wide experience and great legal learning, whose judgment on legal questions commands the respect of the bench and bar of the entire state. It was his opinion that, under

the facts of this case as stipulated and under the provisions of the statute to which we have referred, the lien of this purchase price mortgage ought to be held to be a preferred lien upon the land. We think that his conclusion was the proper one under the facts stipulated and that the statute did not intend to give priority over the lien of a purchase price mortgage upon the land under the circumstances disclosed in this case.

For these reasons, the decree of the lower court will be affirmed.

CosHow, C. J., and Rossman, J., concur.

McBride, J., did not participate in this opinion.

---

Motion to recall mandate denied July 1, 1930

ON MOTION TO RECALL MANDATE
(289 P. 489)

RAND J. In a petition for rehearing the appealing lien claimants contend that the court, in holding that their liens should have priority over the mortgage upon the building, erred in not holding that they were likewise entitled to priority as first liens upon the land. They say that the case is one which comes squarely within the provisions of Or. L., § 10193, which provides that:

"A lien created by this act upon any parcel of land shall be preferred to any lien, mortgage, or other incumbrance which may have attached to said land subsequent to the time when the building or other improvement was commenced   *   *   *   also to any lien, mortgage, or other incumbrance which was unrecorded at the time when said building, structure, or other improvement was commenced, etc."

These provisions they assert include all mortgages, whether purchase price mortgages or otherwise, that

may have attached to the land subsequent to the time when the building on which the lien was claimed was commenced and, since it was stipulated that the building was commenced on March 19 and the mortgage was not executed until March 20 and not recorded until March 22, their liens must by force of the statute be preferred over the lien of the mortgage as prior liens upon the land.

■■ The language of Or. L., § 10193, is: "A lien created by this act upon any parcel of land shall be preferred, etc." This refers to a lien created by the act not upon some building alone but also upon both the building and the land. All liens created by the act are by force of the statute liens upon some building. There are, however, but two instances under our statute when the act itself creates a lien upon the land in addition to creating a lien upon the building. Those are the instances provided for and defined in Or. L., §§ 10192 and 10194. Or. L., § 10191, which gives the right in all instances to a lien, confers the right to a lien upon the building but nothing contained in that section gives the right to a lien upon the land: *Chenoweth v. Spencer*, 64 Or. 540 (131 P. 302, Ann. Cas. 1914D, 678). Whether the lien created by that section shall extend to the land depends wholly upon whether the facts of the particular case bring the case within the provisions of section 10192 or section 10194, Or. L. Under section 10194, where the building or improvement is constructed upon land with the knowledge of the owner of the land by a person who is not the owner and the owner fails to give notice that his property will not be responsible therefor, the lien upon the building extends to and binds the land. That section, however, has no application here because it was stipulated that Woodcock, the

owner of the land, had no knowledge of the construction of the building until after he had parted with his title thereto. Section 10192 provides:

"The land upon which any building or other improvement as aforesaid shall be constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof   *   *   *   shall also be subject to the liens created by this act, if, at the time the work was commenced or the materials for the same had been commenced to be furnished, the said land belonged to the person who caused said building or other improvement to be constructed, altered, or repaired; but if such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to such lien;   *   *   *."

It was stipulated that on March 19, the day on which the Newport Hotel company commenced the construction of the building, the Newport Hotel company was not the owner of the land nor of any interest therein; hence, under the above statute, the lien upon the building could not be a lien upon the land until after the Newport Hotel company had acquired the land or some interest therein, and it is stipulated that the Newport Hotel company did not acquire an interest in the land until it acquired the land subject to the Woodcock mortgage. Hence, under the facts stipulated, while the lien on the building relates back to the time when the work was commenced (*Johnson v. Tucker*, 85 Or. 646, 167 P. 787), the liens on the land could not relate back until the Newport Hotel company acquired title to the land, or of some estate or interest therein, and this was on March 20, when Woodcock parted with his title and received from his grantee a mortgage upon the land for the purchase money. That was the first instant of time when a lien upon the land

could attach under our statute. The delivery of the deed and of the mortgage were concurrent acts performed simultaneously. There was no interval of time between the two. The Newport Hotel company acquired title to the land subject to the lien of the mortgage and the liens could attach only to such title as the Newport Hotel company had acquired in the land.

"Nothing is better settled than if the vendor, at the time of parting with his title, take a mortgage or judgment as a part of the transaction to secure his purchase-money, he retains a lien upon the estate conveyed, not to be displaced by any other encumbrance, provided the mortgage be recorded within the time allowed, or the judgment be entered on the same day. There being no fractions of a day, the judgment lien is contemporaneous with the delivery of the deed." Phillips, Mechanics' Liens (3d Ed.), § 245.

Again, in section 247, the author says:

"Whenever the mechanic has entered upon his building contract with full knowledge of the rights of the vendor, he cannot claim to hold any greater estate in the premises than the person who employed him possessed."

If, under the facts stipulated, this statute must, as contended for, be construed so as to deprive Woodcock of his right to enforce his mortgage as a prior lien upon the land, then the court would be compelled to hold that the statute is unconstitutional because depriving him of a valuable property right without due process of law. It was stipulated that Woodcock never authorized any work to be done upon his property, never knew that any work was being done thereon, never authorized or assented to the incurring of any of the liabilities for which the liens are claimed, and had no knowledge of any work having been done until after he had conveyed the property and accepted a

mortgage in payment of the purchase money. Not being in default, a statute which would deprive Woodcock of his right to enforce his mortgage would be unconstitutional because depriving him of his property without due process of law. Such, however, is not the meaning of the statute.

For these reasons, the petition for rehearing and motion to recall mandate will be denied.

CoSHOW, C. J., McBRIDE and ROSSMAN, JJ., concur.