Argued March 4; modified April 15; objections to cost bill overruled
May 1; rehearing denied July 1; motion to recall mandate
and second petition for rehearing denied September 4;
motion to recall mandate and third petition for
rehearing denied September 30, 1930

## PAGET *v.* PETERS ET AL.

(286 P. 983, 289 P. 1119)

*W. O. Sims* of Portland (Emerson U. Sims and Lowell C. Paget, both of Portland, on the brief) for appellant.

*Arthur H. Lewis* of Portland (Lewis, Lewis & Finnigan, John A. Beckwith, McDonnell Brown, Glenn Y. Wells, Dillmore Lessard, Bartlett Cole, and E. Pinder, all of Portland, on the brief) for respondents.

ROSSMAN, J.  Before considering the question of priority we shall dispose of the attacks made by the plaintiff upon the validity of the materialman's and mechanics' liens.  The plaintiff contends that all of the liens are invalid because the lien notices do not state that August Wemme was the owner of the land. The lien notices in practically all instances state "that said Corbin A. Peters is the owner or reputed owner of said building or improvement of said lot or land above described.  *  *  *" It will be observed from the statement of facts which precedes this decision that on April 6, 1927, Wemme, as vendor, and Peters as ven-

dee, entered into a contract by which the former agreed to sell and the latter agreed to buy this lot; that May 5 Peters started construction of the building; that on June 27, 1927, Peters, having fully paid the purchase price of the lot, received a deed, and upon the same day recorded it; that the first of the liens with which we are concerned was filed July 1, 1927; the last December 19, 1927, and finally it was not until February 8, 1928, that Peters parted with the title. Or. L., § 10195, provides that the lien notice shall state "the name of the owner, or reputed owner, if known. * *. *" We have held that this requirement is complied with when the lien notice states the name of the individual who owns the property when the notice is filed. *Willamette Lumbering Co. v. McLeod,* 27 Or. 272 (40 P. 93). The rule in effect in many other states is the same: 40 C. J., Mechanics' Liens, 228, § 275; 18 R. C. L., Mechanics' Liens, § 68; Jones on Liens (3d Ed.), § 1399. Since Peters was the owner of the record title at the time when the lien notices were filed his name was properly inserted in them as owner.

■ Plaintiff contends that since none of the claimants gave August Wemme the five days notice provided for by § 10191, Or. L., they failed to perfect their lien notices. That portion of the act, just mentioned, upon which the plaintiff relies, provides:

"Every mechanic * * * builder, contractor * * * and other persons performing labor upon or furnishing material * * * to be used in the construction * * * of any building * * * shall have a lien upon the same for the work or labor done or transportation or material furnished at the instance of the owner of the building * * * or his agent; and every contractor * * * or other person having charge of the construction * * * of any building

\* \* \* shall be held to be the agent of the owner for the purpose of this act; provided, that every person \* \* \* furnishing material or supplies of any kind to be used in the construction \* \* \* of any building \* \* \* shall not later than five days after the date of the first delivery, to any contractor or agent, of such material or supplies for which a lien may be claimed, deliver or mail to the owner or reputed owner of the property \* \* \* a notice in writing stating in substance \* \* \* that such person \* \* \* has commenced to deliver material and supplies for use thereon, with the name of the contractor or agent or other person ordering the same, and that a lien may be claimed \* \* \*."

Since the building and not the land is the product of the labor and the material which constructed it, the building and not the land has been selected by our lien laws as the primary subject-matter of the liens; but the presence of a building upon the land may be a benefit to it, and hence our statute makes provision that a lien may be extended to the land as an incident to its encumbrance upon the building. That a lien may exist exclusively upon the building when the claimants are unable to extend it to the land is settled by *Schramm v. Manary,* 123 Or. 354 (260 P. 214, 262 P. 263). *Chenoweth v. Spencer,* 64 Or. 540 (131 P. 302, 34 Ann. Cas. 678), is an illustration of the application by this court of the principle just stated; there it was held that the incidental lien upon the land expired when the building, the product of the lienable items of labor and material, was consumed by fire. Section 10192, Or. L., makes provision for the extension of the lien upon the land; it provides:

"The land upon which any building \* \* \* shall be constructed, together with a convenient space about the same \* \* \* shall also be subject to the liens created by the act, if, at the time the work was com-

menced or the materials for the same had been commenced to be furnished, the said land belonged to the person who caused said building   \*   \*   \*   to be constructed.   \*   \*   \*''

All of the defendants received their requisitions directly from Peters. Apparently immediately following the execution of the contract by the Wemmes, whereby they agreed to convey title to him upon receipt of $1,050, Peters went into possession, and as owner proceeded with the construction of the house. He was in direct charge of all the work. It is evident that he was not the agent of, nor the contractor for Wemme; for a similar conclusion see *Hannan v. Handy*, 104 Conn. 653 (134 Atl. 71, 47 A. L. R. 259). Wemme had no interest whatever in the house; in fact he posted a notice of nonliability. Hence, the defendants were not delivering materials "to any contractor or agent" of the owner of the lot, but were original contractors dealing directly with the owner of the house. The statute requires that only those who deliver materials "to any contractor or agent" shall give notice to the owner of the lot; since the defendants dealt directly with the owner of the building this requirement of the statute did not affect them. They won their right to perfect liens upon the building by delivering materials upon the requisition of the owner of the structure; their rights, if any, to liens upon the land came to them by virtue of Or. L., § 10192, and the relationship between the owner of the building and Wemme. We shall later consider the plaintiff's contention that the liens did not extend to the land.

■ The plaintiff insists that several of the liens are invalid because the lien notices do not state (a) the dates when the claimant began his work or commenced his delivery of material, (b) when he completed his

work or made his last delivery, and (c) when the building was completed. The lien statute, which is the sole source of all requirements that must be met by the lien notice, does not exact of the claimant a statement of those dates. Or. L., § 10195, requires the claimant "to file with the county clerk  *  *  *  a claim containing a true statement of his demand, after deducting all just credits and offsets,  *  *  *." Several of our previous decisions indicate that the dates which are missing in these lien notices need not be set forth: *Christman v. Salway,* 103 Or. 666 (205 P. 541); *St. Johns Lumber Co. v. Pritz,* 75 Or. 286 (146 P. 483, 486); *Allen v. Elwert,* 29 Or. 428 (44 P. 823); *Curtis v. Sestanovich,* 26 Or. 107 (37 P. 67).

From 40 C. J., Mechanics' Liens, 239, § 289, we quote:

"In the absence of any statutory requirement to that effect it has been held not necessary to the validity of the claim that it should state the time of doing the work or furnishing the materials."

From 18 R. C. L., Mechanics' liens, p. 937, § 70, we quote:

"*  *  *  The time of commencing the building or improvement, and consequent attaching of the lien, need not be specified, nor need the notice disclose the dates of the performance of labor or furnishing material, unless required by statute."

It is evident from other parts of these two texts that the above rule is not followed in all jurisdictions, nevertheless since our practice conforms to it we adopt it; it follows that we find no error here.

█ It is next contended that the lien notices which fail to segregate the charges made for labor from those made for material are invalid by reason of that fact.

The plaintiff calls to our attention especially the statement of account contained in the lien notice of defendant, Thomas P. Jensen. That lien notice after reciting that the claimant "did at the special instance and request of the said Corbin A. Peters perform labor upon and furnish and deliver to him at said building, material for use  *  *  *  in doing plastering," contains this statement of account:

"Mr. Corbin A. Peters, in account with Thomas P. Jensen. To performing labor, and material furnished, delivered and used in the construction of said building $345.70."

The lien notice avers that $345.70 is a reasonable charge for the service performed and the material sold; it also avers its nonpayment. The plaintiff's criticism is predicated upon the failure of the statement of account to segregate the charge for labor from that for material. In *St. Johns Lumber Co. v. Pritz,* 75 Or. 286 (146 P. 483, 486), this court took notice of and confirmed the practice employed in this state by members of the bar "in the preparation of liens, merely to declare that the claimant furnished materials without itemizing the materials or even stating the kind of materials;" the statement of account in that lien notice, which, however, included no charge for labor, was as brief as the present one. The lien notice, sustained in *McCormack v. Bertschinger,* 115 Or. 250 (237 P. 363), was almost exactly like the one now before us; it too failed to segregate the charges made for labor from those made for material. In *Zanello & Son v. Portland, Etc., Co.,* 70 Or. 69 (139 P. 572), the statement of account was in these words: "for labor performed and material furnished, as per contract, $1,780;" explanatory matter contained in

other parts of the lien notice set forth the information that the charge arose out of the construction of some brick walls and concrete footings. Thus, that lien notice was very similar to our present one; the fact that a special contract preceded the performance of the work does not create a material distinction, because the party who ordered the performance of the work defaulted. In the state of New York statements of account of the type before us are approved: Jensen's New York Law of Mechanics' Liens (2d Ed.), § 66; see also, generally, 40 C. J., p. 241. While a statement of account containing an itemized charge might in some instances be useful, yet in view of the loose phraseology of our statute and the practice sustained by *St. Johns Lumber Co. v. Pritz,* supra, we do not feel justified in declaring these lien notices invalid by reason of their failure to segregate the charges for these two items.

It is next contended that some of the lien notices are invalid because of the manner in which charges for extra items are set forth in them. We have carefully examined all of these lien claims and their accompanying statements of account. In all instances the extra items are clearly segregated from the principal charge so that the statement of account readily informs those interested of the charge made for the principal service and of the charge made for the extra items; some of the statements of account itemize the latter. While it is true that in some instances the portions of the lien notices, other than the statement of account, unite the two charges and make claim for the total thus: "The contract and reasonable price thereof was and is the sum of $649.65," yet we find no reason presented by this fact for declaring the lien notice invalid.

■■ We come now to another series of attacks made upon the lien notices. The plaintiff contends that some of the lien notices contain nonlienable items and that one of them, that of the City Planing Mill company, includes material which was not used in the construction work. We shall mention specifically only one of the liens of the first group, that of the Shuholm company. The lien notice of the City Planing Mill was for $1,109.78 and arose out of the delivery of lumber and mill work to Peters. Apparently $46.40 of this material was not actually used in the construction of the house, although it was delivered to the premises. About half of the item of $46.40 consisted of the value of a window and a window frame supplied by the claimant, and which for some unexplained reason was not used in the construction of the house; the plaintiff found this material in the basement. The various nonused materials were all lienable, and were adapted to use in the construction of this house. The testimony does not suggest any inference that the claimant had any dishonest purpose, intended to overreach, or was aware of the nonuse of this material when it prepared its lien notice. The circuit court deducted $46.40 from the $1,109.78 and entered its decree for the balance. The plaintiff contends that the entire lien should be defeated because of the inclusion of this nonused lumber and mill work. However, since the claimant was not actuated by any bad faith, and made an excusable error in the absence of notice that $46.40 of the total of $1,100 of material had not been used we find no error in the circuit court's dispositiion of this lien. The principle we have applied is stated in *Northwest Lumber & Fuel Co. v. Plantz,* 126 Or. 69 (227 P. 1116, 268 P. 763), and *Fitch v. Howitt,* 32 Or. 396 (52 P. 192). The lien of the Shuholm company was for a total of

$154.05 and arose out of cement work performed in the construction of the house. The plaintiff objects to the following items stated thus in this lien notice:

> "Cartage ........................................$ 3.75
> Cartage ................................... 3.50
> Glading-McBean Co. ................ 11.00
> Insurance ................................ 4.02"

In support of the alleged lien, testimony was offered that the Shuholm company performed this work without the amount of the charge having been first agreed upon. When it had completed its undertaking it determined the amount of its claim by adding the amount expended for labor, the amount paid for materials, the expense of cartage, the premium it paid for the "insurance on the labor  *  *  *  for protection of myself and the owner," and 10 per cent for supervision. The uncontradicted testimony showed that its charge was reasonable. The item "Glading-McBean Co., $11.00" represented some material consumed in the work. It seems clear that this item, as well as the cost of carting the material to the premises is a proper item of expense chargeable to the owner. Cartage is either labor or is a part of the cost of material. We revert to the charge for insurance. It is a well known fact that all responsibile contractors, who perform this kind of work, provide themselves with casualty insurance, and that the cost of it is an item of expense which is passed on to the owner. This is not an instance where an insurance company has filed a lien for an insurance premium, and contends that the item is lienable. Based upon the same reasoning as was employed by Mr. Justice BEAN in *Barr v. World Keepfresh Company,* 77 Or. 95 (150 P. 747), we conclude that the total charge, which was otherwise established as

reasonable, did not become unreasonable when it appeared that it included this item for insurance.

■ Objection is made to the lien notice filed by the J. C. English company, a corporation; the jurat commences thus: "I, J. C. English, the claimant named in the foregoing claim * * *"; it is signed thus: "J. C. English Company, J. C. English, claimant." Both the lien notice and the evidence showed that Mr. English was the president of that corporation. In *Ainslie Co. v. Kohn,* 16 Or. 363 (19 P. 97), the fact that the lien notice was not signed was held not a "sufficient ground of objection to the claim." In *Commercial Corp. v. Krueger,* 123 Or. 534 (262 P. 937), the defect in an affidavit for attachment was very similar to the defect in this lien notice; it was held not fatal. In the following cases defects in lien notices similar to the one before us were held to be irregularities which did not render the lien void: *Consumers Lumber Co. v. Hayutin,* 75 Colo. 483 (226 P. 860); *Coghlan v. Quartararo et al.,* 15 Cal. App. 662 (115 P. 664), and *Henry & Coatsworth v. Fisherdick,* 37 Neb. 207 (55 N. W. 643). We conclude that the lien notice is not void on account of the above defect.

The above disposes of substantially all of the attacks upon the lien notices; other matters affecting the validity of these notices, which we have not specifically mentioned, we have nevertheless considered and have decided against the plaintiff.

■ We come now to the contention of the mortgagee that the liens, if valid, affected only the building and the $100 interest in the lot which Peters owned when construction work commenced. It will be recalled that the Wemmes posted a notice of nonliability, and that

they delivered to Peters a deed to the property June 27, 1927, conveying to him the entire title. The first lien was filed July 1; July 7 the mortgage was executed.

Section 10192, Or. L., which we have previously quoted in part, provides that the land upon which any building shall be constructed, together with a convenient space about the same shall be subject to the liens, "if, at the time the work was commenced * * * the said land belonged to the person who caused said building * * * to be constructed * * * but if such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to such lien * * *." It will be observed that the statute does not mention what effect a lien notice which names the owner of a limited interest shall have in the event this limited estate becomes expanded into a greater one. The plaintiff contends that the statute's effect is to prevent the claimant from asserting a lien against the fee when the lesser interest and the remainder merge in the individual named in the lien.

The purpose of our lien statutes, unlike the enactments of some other states, is to subject primarily the building to the lien. Since the building renders the land more valuable it is just that Or. L., § 10192, should extend the operation of the lien to whatever interest the owner of the building had in the land, provided he ordered the construction of the improvement. If he did not authorize the erection of the building and did not stand by without posting the notice of nonliability mentioned in § 10194 his interest in the land is unaffected by the lien attaching to the building. But if the owner of the land ordered the improvement our lien laws contemplate that his interest in the land

should be subject to the lien and makes ample provision for extending the lien from the building to the land. Hence it is evident that the policy which underlies our legislation is served by subjecting an after-acquired title to the lien provided the equity of a third party has not intervened, and provided further that the after-acquired title enlarges an estate or an interest to which the lien has already become attached. As a matter of fact the security behind the lien generally expands because as the work progresses and more materials and labor are absorbed by the improvement the liens attach themselves to the new work as well as to that which was in place when the claimant performed his part. It would be as reasonable to limit the lien of a laborer, who constructed the foundation walls, to that portion of the structure as to deprive his lien of the benefit of an after-acquired title. We quote the following apt language from *Curtis v. Sestanovich*, 26 Or. 107 (37 P. 67) : "The lien begins with the commencement of the construction of the building, grows with its growth and ripens with its completion." The authorities are opposed to the construction suggested by the plaintiff. From 18 R. C. L. Mechanics' Liens, p. 884, § 12, we quote:

"The lien attaches to whatever interest the owner had when the work was begun and to another or greater interest whenever acquired before the lien is enforced."

From § 13, p. 885, of the same volume we quote:

"Under statutes as now in terms written or as now construed, authorizing a mechanic's lien to attach to an equitable interest in land, such a lien may be fixed against the interest in land held under a contract of purchase, and such lien will attach to the after-acquired legal title the moment it vests in the purchaser."

From 40 C. J., Mechanics' Liens, § 352, p. 281, we quote:

"The lien extends at least to the interest owned by the person who caused the improvement to be made * * * when the work * * * commenced; and it is generally held that it extends also to an interest subsequently acquired by him, at least where no intervening equity forbids, or where the acquisition is during the progress of the improvement, or is of an interest which increases or enlarges the estate to which the lien has already attached * * *."

See to the same effect Phillips on Mechanics' Liens, (3d Ed.) § 186, and Jones on Liens, (3d Ed.) § 1259. We have examined substantially all of the numerous cases cited by the above texts and find that they support the writers. The following limitations upon the foregoing general rule should be noted; we quote from the case of *Robert Garrett Lumber Co. v. Loftus,* 82 Kan. 556, 560 (109 P. 179):

"Expressions are common in the law books to the effect that a mechanic's lien binds interests in the property subsequently acquired by the person who is the owner within the meaning of the statute. An examination of the authorities shows that, although not so stated in express terms, the principle applies to those cases only in which the after-acquired interest operates to increase or enlarge the estate to which the lien has already attached, as when the holder of a leasehold or of a life estate purchases the fee, or the holder of an equitable estate acquires the legal title, or an encumbrance is removed, or when an estate by curtesy becomes initiate by the birth of a child, or when one without title makes an improvement and then obtains title. But if the acquired interest be distinct and independent, so that it does not merge into the estate already held, or inure to the support of such estate, it is not affected by the lien."

The plaintiff, however, contends that the three following decisions, taken from our reports, are at variance with the rules above stated: *Kezartee v. Marks & Co.*, 15 Or. 529 (16 P. 407); *Chenoweth v. Spencer,* 64 Or. 540 (131 P. 302, 34 Ann. Cas. 678), and *Schramm v. Manary,* 123 Or. 354 (260 P. 214, 262 P. 263). Neither the first nor the third of the above cases involved an after-acquired title; in fact in *Schramm v. Manary* the limited title which the builder had when construction was commenced had completely disappeared by forfeiture before the claimants were able to avail themselves of it. In *Chenoweth v. Spencer* the court held that due to the destruction of the building upon which the claimant claimed a lien the lien was lost, and he had no lien in the land. Due to the above distinctions these three cases have no substantial bearing upon our present problem. The recent cases of *Pacific Spruce Corp. v. Ore. Portland Cement Co.,* supra, p. 223 (286 P. 520, 289 P. 489), and *Randolph v. Christensen,* 124 Or. 661 (265 P. 797), are instances where the liens attach to after-acquired titles. *Eastern & Western Lumber Co. v. Williams,* 129 Or. 1 (276 P. 257), both in its conclusion and its reasoning directly supports the contentions of the claimants. It is our conclusion that the liens bound not only the limited interest which Peters held when the work commenced, but also his subsequently acquired title.

■ The question of priority between the mortgage and the liens now presents itself. The plaintiff claims that his mortgage to the extent of $950, which paid the balance upon the purchase price of the lot, should be deemed a purchase money mortgage having priority over the liens. The claimants rely upon our several previous holdings that all liens, whether for the first

day's labor that commenced construction or for the last hour's work that completed the building, assume their priority from the hour when the first work was done or the first material was delivered, and next rely upon Or. L., § 10193, which provides:

"A lien created by this act upon any parcel of land shall be preferred to any  *   *   *   mortgage  *  *  * which may have attached to said land subsequent to the time when the building or other improvement was commenced.  *   *   *"

In *Pacific Spruce Corp. v. Ore. Portland Cement Co.*, supra, the mortgage was held to be a purchase money one and entitled to priority over the liens in the land. There the execution of the deed and the mortgage were simultaneous acts, and it was contemplated that the mortgage should be a purchase money one when the sale of the land was effected; the mortgagee had been the vendor. In our present case (1) the mortgagee was not the vendor, but is an individual engaged in the mortgage loan business; (2) a purchase money mortgage was not contemplated by Wemme and Peters when the land was sold; (3) the testimony does not disclose that when the mortgage was executed the parties agreed that $950 should be applied upon the purchase price of the lot; as far as the testimony indicates Peters could have used the $3,750 for any purpose which he chose; (4) the transactions between Wemme and Peters did not contemplate the execution of a mortgage; Wemme was to be paid the full purchase price before he parted with title; (5) Peters received title June 29; the mortgage was not executed until July 8, thus for several days the unencumbered title was vested in Peters. (6) It is apparent from the fact just recited that the mortgage was not made at the same time when the deed was

given and the execution of the mortgage was not a part of a continuous transaction which had its inception in the contract for a deed.

To us it seems that a conclusion is not authorized from the above facts that the execution of the deed and the mortgage were either simultaneous or constructively simultaneous acts. In *Ladd & Tilton Bank v. Mitchell,* 93 Or. 668 (184 P. 282, 6 A. L. R. 1420), it is said:

"The position of the defendants is that the mortgage was a purchase-money mortgage. We think that it may be conceded that it is a general rule, to which there is little dissent, that a mortgage on land executed by the purchaser of the land contemporaneously with the acquirement of the legal title thereto, or afterwards, but as a part of the same transaction, is a 'purchase-money mortgage', and entitled to preference as such over all other claims or liens arising through the mortgagor, though they are prior in point of time; and this is true without reference to whether the mortgage was executed to the vendor or to a third person."

In the present instance the most that can be said in favor of the plaintiff's contention is that Peters was indebted for the lot under a contract which provided that he could not obtain the deed until he had paid in full the purchase price; under these circumstances he somehow obtained $950 from the plaintiff which he applied upon the purchase price of the lot and thereby obtained the deed; approximately a week later he executed a note and a mortgage for $3,750, which named the plaintiff as the payee and mortgagee, and thus apparently enabled the plaintiff to secure the return of the above advance. From 41 C. J., Mortgages, § 472, p. 531, we quote:

" * * * But the money must have been loaned with the express purpose and intention that it should

be used in paying the purchase price of the land; the mere fact that it was so used without any understanding to that effect, will give the lender no superior equity. And if the purchaser of land is already indebted to the vendor for the price of the same, and then borrows money from a third person for the purpose of discharging this debt, and gives the latter a mortgage on the land, this mortgage is not entitled to the standing of a purchase-money mortgage.'' See to the same effect Jones on Mortgages (8th Ed.), § 585 and § 588.

From *Nicholson v. Aney*, 127 Iowa 278 (103 N. W. 201), we quote:

'' * * * Defendant Aney contends, however, that both his mortgages were given upon property sold, to secure the purchase price thereof. But this is manifestly unsound. His mortgages were not to secure the purchase price of any property sold by him, but to secure him for money borrowed by Todd, which he (Todd) was to, and did, use in taking up the Kharas mortgage, and to procure material with which to run the plant after he acquired it. Aney did not sell the property, or any part of it, to Todd, nor were his mortgages given to secure the purchase price. Jones on Mortgages, vol. 1, § 465. The Kharas mortgage was fully paid and extinguished by Todd from the money borrowed of Aney. Hence Aney is not entitled to be subrogated to the mortgagee's rights under that mortgage.''

Since the materialman's and mechanics' liens are in fact purchase money obligations, and since the plaintiff seeks to displace them so as to gain priority for a part of his mortgage, we believe that this advantage ought not be granted to him unless he can point to some part of the record which indicates that the claim presented by him arose out of a transaction which contemplated that when Wemme parted with the deed it was not intended that the unencumbered

title should repose for a moment in Peters, where it would be subject to claimants' liens and judgments against Peters, but should at once be encumbered with the plaintiff's mortgage. While it was not necessary that at the instant when Wemme delivered the deed Paget should receive the mortgage, yet it is absolutely essential to this type of mortgage that the parties intended that such should be the result. See *Curtis v. Root,* 20 Ill. 54. We find no evidence to that effect in the record; to the contrary a week elapsed after the delivery of the deed and before the execution of the mortgage for which no explanation was made. Moreover in this state a decree for the foreclosure of a purchase-money mortgage shall not contain a deficiency judgment if the property fails to satisfy the debt: Or. L., § 426. If the plaintiff was endeavoring to secure a deficiency judgment against Peters and the testimony was no different than it is now, we doubt whether we would concede that any portion of his mortgage was a purchase-money one. We conclude that no part of the plaintiff's mortgage is entitled to consideration as a purchase-money one. The two cases of *Libbey v. Tidden,* 192 Mass. 175 (78 N. E. 313, 7 Ann. Cas. 617), and *Osborne v. Barnes,* 179 Mass. 597 (61 N. E. 276), reached similar results upon facts somewhat like those before us.

The plaintiff contends that the testimony does not establish the lien claim of Frank Beniteau and its assignment to the cross-complainant, Crescent Shingle company, nor the assignment of the lien claim of the Anderson Gas Appliance company to the cross-complainant, Dennis Supply company. Our examination of the evidence discloses that the latter contention is without merit; but, the record is silent as to the assign-

ment of the Beniteau lien, and the evidence in support of his claim is so meager that in our opinion it is insufficient. The Beniteau claim amounting to the sum of $92.90, together with the attorney's fee of $25 and attendant disbursements allowed by the circuit court will therefore be disallowed.

█ Finally the mortgagee contends that all lien claimants who failed to furnish to E. J. Lammers, upon his demand, a statement of the prices charged for the material which they had delivered to the premises cannot recover any attorney's fees, costs or disbursements in this suit. It will be recalled that Mr. Lammers took a deed to this property after this suit had been commenced, and after all cross-complainants except three had filed their pleadings. The contention of the mortgagee is predicated on Or. L., § 10191, which, as we have previously observed, makes provision for mechanics' and materialman's liens, and requires that all materialmen, who received their requisitions from the contractor as distinguished from the owner, shall deliver to the latter a notice in writing stating in substance * * * that such person * * * has commenced to deliver material." This section next provides:

"(a) That in all cases the sender of such notice upon demand of the owner * * * shall furnish such owner * * * a list of all material or supplies furnished * * * (b) In all cases where a list of material or supplies has been furnished as required by subdivision (a) * * * and notice of intention to commence suit to foreclose any lien created by this act has been given as provided for in this act, the sender of such notice of intention to commence suit, upon demand of the owner * * * shall furnish such owner * * * within five days after such demand a statement of the prices charged or claimed

for such material or supplies; (c) It shall be the duty of every person, \* \* \* appearing as plaintiff or cross-complainant in any suit to foreclose a lien \* \* \* to plead and prove that a notice in writing stating that such person, firm \* \* \* intends to commence suit to foreclose his, \* \* \* lien, was mailed or delivered to the owner \* \* \* of the property upon which the lien is claimed at least seven days prior to the commencement of the suit to foreclose such lien; (d) no costs, disbursements or attorney's fees shall be allowed to any plaintiff or cross-complainant in any suit to foreclose a lien created by this act who fails to comply with the requirements of subdivisions (a), (b) and (c)."

We think it is evident from the following routine (1) the notice sent by the materialman advising the owner that he has commenced delivery, (2) the owner's demand for a list of materials furnished for the improvement, (3) the materialman's compliance therewith, (4) the claimant's seven day notice to the owner informing the latter of his intenion to foreclose the lien, (5) the owner's demand for a statement of prices charged for the materials and (6) the materialman's compliance therewith, indicate that all of these notices, demands and statements of information are to be made and sent before the suit is filed. If after the suit has been begun a party desires an itemized statement of the account Or. L., § 84, makes provision for such a contingency. The statements of account to which the owner is entitled by virtue of § 10191 is intended to supply information that will enable him to determine whether the claim is just and should be paid, or whether he should submit to litigation. Having reached these conclusions it follows that in our opinion this contention of the plaintiff is without merit.

It follows that the decree of the circuit court will be affirmed except so far as it is applicable to the lien claim of the defendant Frank Beniteau.

CoSHOW, C. J., and RAND, JJ., concur.

McBRIDE, J., did not participate in this opinion.

---

Rehearing denied July 1, 1930

ON PETITION FOR REHEARING

(289 P. 1119)

ROSSMAN, J. The petition for rehearing has caused us to consider carefully once more the various issues determined by our decision. After giving the matter much thought we have decided to adhere to the conclusions therein announced. The facts outlined in our decision have persuaded us, however, that costs and disbursements in this court should be allowed to neither party.

Petition for rehearing denied.

CoSHOW, C. J., and RAND, J., concur.

McBRIDE, J., did not participate in this opinion.