478

McBRIDE *v.* McBRIDE ET AL.

(36 P. (2d) 175)

*L. E. Schmitt,* of Portland (Dan W. Hartley, of Portland, on the brief), for appellant.

*J. S. Middleton,* of Portland, for W. W. and Louella McBride.

CAMPBELL, J. On December 1, 1919, W. W. McBride, for a valuable consideration, executed a mortgage to Cora McBride, plaintiff herein, in the

sum of $10,000. The indebtedness secured by this mortgage was evidenced by two notes, each in the sum of $5,000, one due in fifteen years, the other due in ten years, from date of execution. This mortgage was a first mortgage on *inter alia* a part of lots 7 and 8, in block 275, Lane's Addition to the city of East Portland, now Portland. On February 3, 1925, Cora McBride executed an instrument in writing, whereby she subordinated her said first mortgage, so far as the parcel of real estate above described was concerned, to a mortgage in the sum of $2,500, due three years after date, executed by W. W. McBride and Louella McBride, his wife, to Louis Millman and Mary C. Shepherd. On November 14, 1928, W. W. McBride and Louella McBride, his wife, executed their promissory note to the Bank of East Portland in the sum of $2,500, due in one year. This note was secured by a mortgage executed by the same parties on the above described tract of land. Defendant Roger Newhall, by due assignments, is now the owner and holder of this note and mortgage. The money obtained from the bank on the note and mortgage was used to pay the Millman and Shepherd mortgage, and said last mortgage was satisfied of record on November 20, 1928.

Plaintiff instituted the instant suit to foreclose her mortgage and, among others, made said Roger Newhall a defendant, alleging that he claimed some interest in the above described property, but whatever right or interest he had was subsequent and inferior to plaintiff's mortgage.

To this complaint, defendant Newhall filed an answer in which he admitted all the allegations of the complaint except the one alleging his mortgage to be inferior or subsequent to plaintiff's. For a further

answer and defense, he alleged in effect: That defendants W. W. McBride and Louella McBride, his wife, had agreed with the Bank of East Portland that if the bank should loan W. W. McBride said $2,500, which should be used to pay the note and mortgage of Millman and Shepherd, that W. W. McBride would execute one on the same property to secure said sum and that said mortgage should be a first and paramount lien on said premises; that plaintiff Cora McBride agreed and consented to subordinate her mortgage, so far as said premises were concerned, to the bank's said mortgage and that she agreed to execute a contract to that effect but that she failed and refused to perform said agreement; that because the money, obtained from the bank, was used to pay the Millman and Shepherd mortgage, the bank and its assigns should be subrogated to the rights of said Millman and Shepherd.

Upon trial, the circuit court found in favor of defendant Newhall and adjudged his mortgage a first lien and superior to plaintiff's mortgage on said premises and entered a decree accordingly. Plaintiff appeals.

There is just one question presented for our consideration: Did the circuit court err in holding that respondent's mortgage was superior to appellant's?

Respondent contends that there is no error, for two reasons: First, that appellant expressly agreed that respondent's mortgage should be given superiority; second, that because the money obtained on respondent's mortgage, at the request of the debtor therein, W. W. McBride, was used to pay the Millman and Shepherd mortgage which was a first mortgage, respondent should be subrogated to the rights held by said Millman and Shepherd.

■ There is no competent testimony tending to show that appellant entered into an agreement with the bank or with W. W. McBride to subordinate her mortgage to that of respondent. The evidence shows that at the time respondent's mortgage was executed to the Bank of East Portland, one H. H. Newhall (who died prior to the filing of the complaint herein) was the president of the Bank of East Portland and negotiated and completed the transaction of respondent's mortgage. W. W. McBride applied to the bank through its president for a loan with which to pay the Millman and Shepherd mortgage and was advised by the president to get the consent of plaintiff to subordinate her mortgage to the one which was about to be executed to the bank. Thereupon, W. W. McBride interviewed appellant and reported back to the bank that he "did not get any place" with her. Called as a witness for respondent, he testified that when the president of the bank advised him to see her about the matter, he called on appellant to get her consent to subordinate her mortgage to the one he was about to give to the bank.

"Well, I told her the mortgage on the twenty-five hundred dollars (Millman and Shepherd mortgage) was pretty pressing and I just had to do something, I had to pay it off—'How about you releasing your mortgage if I get it from him?' 'Well', she said, 'I will see about that, I will consider it' or something to that effect or 'I won't give you no answer today'. Well, I saw right away there was no use of talking any more about it and I made up my mind I would come back again some other time. So I went down to the bank and I told Mr. Newhall that I had been up to see her. 'But', I says, 'I didn't get any place'. 'You call her up over the phone and see what she says, see what you can do with her'."

He further testified that Mr. Newhall called appellant over the phone and he (the witness) sat in the bank and listened, but on account of his defective hearing, he could only get part of what Mr. Newhall said over the phone and nothing of what the person who answered said, but gathered enough to know that Mr. Newhall was trying to get her to permit the contemplated bank mortgage to be superior to her mortgage. At the end of the conversation Mr. Newhall "hung up the phone and kind of looked around at me and then he picked up his pen and paper and began to draw a mortgage, so I naturally supposed that whatever conversation he had with her was about satisfactory with him". W. W. McBride had no further conversation with appellant before he executed the mortgage to the bank.

This is practically all the testimony respondent introduced of an agreement on the part of appellant to subordinate her mortgage.

Appellant, when on the witness stand in her own behalf, testified that she advised the bank president over the phone in the conversation above referred to— the only one she had with him—that she could not agree to that proposition. On being pressed to agree, she said she would come down to see him. However, she did not come to see him at any time, and that was the only conversation she had with him regarding the transaction. She further testified, that when she signed the agreement to subordinate her mortgage to the Millman and Shepherd mortgage, it was with the distinct understanding with W. W. McBride that he would pay said mortgage when due and thus reinstate her mortgage again to its position of first mortgage.

■ ■ Many of the necessary elements of equitable subrogation are totally lacking in the instant case. The

bank did not pay the debt on the Millman and Shepherd mortgage directly. It loaned the money to W. W. McBride for the purpose. The debtor, W. W. McBride, did not advise the bank that it would have a first mortgage. The bank knew at the time of making the mortgage that it did not have a first mortgage. Before letting W. W. McBride have the money, it was fully informed of appellant's mortgage. The bank was under no obligation to pay W. W. McBride's debt or to loan him money for that purpose. There was no mistake, concealment, fraud or misrepresentation as an inducing cause to get the bank to advance the money. The evidence does not show any attempt to keep alive the Millman and Shepherd mortgage.

"While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another; for such person can establish no equity, and can obtain the right of substitution by contract only. The demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished. A stranger or volunteer, as those terms are used with reference to the subject of subrogation, is one who, in no event resulting from the existing state of affairs, can become liable for the debt, and whose property is not charged with the payment thereof and cannot be sold therefor. He is not necessarily one who had had nothing to do with the transaction out of which the debt grew. Any one being under no legal obligation or liability to pay the debt is a stranger, and if he pays the debt, a mere volunteer. A person who is under no obligation whatever to pay the debt of another secured by a mortgage, and who has no interest in or relation to the property, is a volunteer, within the meaning of the rule." 25 R. C. L. 1324.

It would not benefit the litigants or the legal profession to attempt to collate and analyze the many decisions on the question of subrogation. The disposition of each case must rest on its own peculiar facts. While the courts are not entirely unanimous, the weight of authority is in conformity with the principles announced above: *U. S. F. & G. Co. v. Bramwell,* 108 Or. 261 (217 P. 332, 32 A. L. R. 829); *Federal Land Bank v. Marvin,* 228 Ky. 242 (14 S. W. (2d) 762, 70 A. L. R. 1392), and the annotation thereto; *Errett v. Wheeler,* 109 Minn. 157 (123 N. W. 414, 26 L. R. A. (N. S.) 816.

It is admitted that respondent's note and mortgage has all been paid except the sum of $850 with interest at 7 per cent per annum from April 8, 1931.

The decree of the circuit court will be reversed and one entered decreeing plaintiff's mortgage to be a first mortgage and superior to that of respondent's and foreclosing said mortgages in accordance with their terms and this opinion. It is so ordered.

RAND, C. J., and BAILEY and ROSSMAN, JJ., concur.