Argued March 12; affirmed April 16, 1940

# METROPOLITAN LIFE INSURANCE COMPANY v. CRAVEN

(101 P. (2d) 237)

Department 1.

*B. G. Skulason*, of Portland, for appellant.

*Verne Dusenbery*, of Portland (Crum & Dusenbery and Carey Martin, all of Portland, on the brief), for respondent.

KELLY, J. On December 13, 1922, a judgment was rendered for $1,500 and costs in favor of defendant against one Johnson. On September 9, 1932, this judgment was renewed and is still in force and effect.

On April 15, 1925, Johnson purchased the real property involved in this suit, which real property is in Multnomah County, Oregon, and gave a mortgage thereon to the Union Savings & Loan Association to

secure the payment of seventy-two equal monthly installments of $48.15 payable on the 20th day of each month commencing with the month of May, 1925, each installment being a payment on account of a loan of $2,600 as principal and $866.80 interest thereon. Johnson's deed of purchase and said mortgage to the Union Savings & Loan Association were received for record by the county clerk of Multnomah County, Oregon, at the same time on May 1, 1925.

■ During the trial in the circuit court, it was stipulated that the mortgage given to the Union Savings & Loan Association was a purchase money mortgage. It was therefore entitled to preference as such over all other claims or liens arising through the mortgagor: *Ladd & Tilton Bank v. Mitchell*, 93 Or. 668, 184 P. 282, 6 A. L. R. 1420; *Pacific Spruce Corporation v. Oregon Cement Co.*, 133 Or. 223, 235, 286 P. 520, 289 P. 489, 72 A. L. R. 1507; *Paget v. Peters*, 133 Or. 608, 286 P. 983, 289 P. 1119.

On August 31, 1925, Johnson borrowed from Portland Trust and Savings Bank $2,750 and executed a mortgage upon the property involved herein, to secure the payment of said sum in monthly installments of $85 to be paid on the first day of November, 1928, and a like sum to be paid on the first day of each and every May and November thereafter, until November 1, 1940, when a final payment of the balance of the principal then due was to have been made.

On the trial in the circuit court, it was stipulated that the proceeds of the loan from Portland Trust and Savings Bank were used to retire the Union Savings & Loan Association mortgage.

On September 5, 1925, the mortgage to the Union Savings & Loan Association was discharged of record.

On September 14, 1925, Johnson conveyed the premises to one Cowlishaw.

Johnson's application for a loan from Portland Trust and Savings Bank expressly stated that it was made as an application for a first mortgage loan, and that the application was taken with the view to selling the loan to plaintiff. On the 2nd day of November, 1925, said Johnson made an affidavit that there were no judgments, decrees, recognizances, lis pendens, mechanic's liens or transcript of judgment recorded or filed in said county, or in any county or court, state or national, or filed in the office of the clerk of any county or court in this state, or any bankruptcy proceedings or pending suits which might result in a judgment affecting the title to the premises in suit.

On the 3rd day of November, 1925, Portland Trust and Savings Bank executed an assignment of its said mortgage to plaintiff, which assignment was received for record by the county clerk of Multnomah County on November 4, 1925, and was thereupon recorded in book 1097, record of mortgages at page 302 thereof.

In 1930, said Cowlishaw conveyed said premises to one Marcy and wife.

On October 16, 1933, Marcy and wife, being unable to continue the payment upon plaintiff's mortgage, transferred the mortgaged property to plaintiff for which plaintiff paid them $50. Plaintiff's mortgage was thereupon discharged of record.

On September 8, 1925, the loan by the Portland Trust and Savings Bank was consummated and its mortgage filed for record. Before said last mentioned loan was made by the Portland Trust and Savings Bank to Johnson, an abstract of title to the premises

involved was procured from a reputable abstracting company. Said abstract contained a certificate of said abstract company that it constituted a correct abstract of all matters affecting the title to the real property in suit for the period of time from the United States Government to and including September 9, 1925, at 8 a. m. It disclosed that there was no judgment affecting such title. On September 4, 1925, the legal firm of Murdoch & Crum reported to the Portland Trust and Savings Bank that the abstract disclosed that the title to said real property was in said Johnson and his wife subject to certain taxes, a city lien and the mortgage of Union Savings & Loan Association; but in said attorneys' report no mention was made of defendant's judgment.

On November 5, 1925, said abstract company furnished plaintiff with a certificate to the effect that said abstract embraced all conveyances and other instruments of writing affecting the title to said real estate of record or on file in the office of the county clerk of Multnomah County, and that there were no judgments, except as therein set forth, affecting said title.

Another abstract company continued said abstract first from November 5, 1925, at 8 a. m. to September 30, 1933, at 8 a. m. and then from September 30, 1933, at 8 a. m. to October 26, 1933, at 8 a. m.

Defendant's judgment is not shown in said abstract or in any continuation thereof.

It appears from the testimony that the first knowledge plaintiff had of the existence of defendant's judgment was when plaintiff acquired title to the property in suit from Mr. Marcy and his wife, which, as stated, occurred on October 16, 1933.

On May 6, 1937, this suit was instituted.

In defendant's answer to plaintiff's second amended complaint, among other things, it is alleged that:

"The mortgage to the Union Savings & Loan Association ceased to be a lien or incumbrance on the real property in question or of any effect or validity for any purpose whatever because of the payment of the amount secured thereby more than ten years before the commencement of this suit, namely on September 8, 1925, and the plaintiff's pretended cause of suit, as well as said mortgage, is barred by Sections 54-111, 54-112 and 54-114, and by Section 1-204, Oregon Code 1930."

Thus it will be seen that the question is presented whether the right to subrogation or substitution is available to plaintiff whereby its interest in the real property in suit may be given the priority held by the Union Savings & Loan Association under the mortgage given to it by said Johnson, which priority was superior to defendant's judgment lien.

Defendant also contends that even if it be held that, if seasonably asserted, such a right of subrogation or substitution would be available to plaintiff, still, because more than ten years have elapsed since the Union Savings & Loan Association's mortgage was paid, plaintiff's right to subrogation is barred.

Our examination of the authorities leads us to the conclusion that, numerically, the greater weight of authority is to the effect that one, advancing money to discharge a prior lien on real or personal property and taking a new mortgage as security, is held to be entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was excusably ignorant. In twenty-five of the states, not including Oregon, this rule has been recognized.

In an early case, this court speaking through the late Mr. Justice R. S. BEAN, said:

"But the mere fact that a former mortgage was released, and a new one taken in place thereof, in ignorance of the existence of an intervening lien, is, in equity, deemed such a mistake of fact as will entitle the plaintiff to relief, although such lien is a matter of record: Pearce v. Buell, 22 Or. 29, 33, (29 Pac. 78); Kern v. Hotaling, 27 Or. 205 (50 Am. St. Rep. 710, 40 Pac. 168)." *Capital Lumbering Co. v. Ryan*, 34 Or. 73, 78, 54 P. 1093.

Inferentially, the doctrine of subrogation is recognized, although withheld in *McBride v. McBride*, 148 Or. 478, 36 P. (2d) 175.

For additional authorities see 25 R. C. L. p. 1339; 60 C. J. section 116, pp. 813-15; Vol. 3, Pomeroy's Equity Jurisprudence, (4th Ed.) section 1212, at pp. 2904, 2906; Note in 70 A. L. R. p. 1396, and cases there cited. In this note many cases are listed wherein the right of subrogation has been denied; but the facts in those cases differ from the facts in the case at bar.

The case of *Cohn v. Hoffman*, 50 Ark. 108, 6 S. W. 511, is cited by defendant. In that case Hoffman sued in ejectment. The common source of title to the premises there involved was one Bray, who had purchased the premises from a railway company upon a credit, and about the first of November, 1880, had requested Cohn to pay the residue of purchase money then due, and had agreed to secure the payment of such advance by a mortgage upon the land; that under said agreement Cohn had advanced $300 and the railway company had conveyed the land to Bray, and on December 1, 1880, Bray and wife had executed the stipulated security; and that Bray, becoming afterwards further indebted to Cohn for goods, wares and merchandise,

had sold and conveyed his equity of redemption to Cohn, who had entered and, believing himself to be the rightful owner, had made valuable improvements.

Hoffman had acquired his title by purchase at an execution sale; the judgment against Bray, upon which the execution issued, was rendered September 11, 1878. The sheriff's deed related back to the rendition of the judgment. (Mansf. Dig. Sec. 3001.) There was no mistake as in the case at bar by reason of which Cohn was unaware of the judgment in favor of Hoffman against Bray. There was no representation to Cohn by Bray that such judgment was nonexistent.

*Mather v. Jenswold Jr.*, 72 Iowa 550, 32 N. W. 512, 34 N. W. 327, is a case wherein the plaintiff loaned the owner money to take up a mortgage. At the time, there was a judgment against the owner and a sale of the property had been made thereunder. Plaintiff had no knowledge of the judgment or the sale thereunder when he made the loan and enabled the owner to discharge the mortgage then upon the property.

The court held that the plaintiff was not entitled to have the satisfaction of the first mortgage set aside and become subrogated to all the rights of the first mortgagee. The opinion recites:

"There was no mistake, except that the plaintiff failed to exercise the diligence required in the examination of the records, and therefore failed to discover the existence of the judgment and the same thereunder."

In the case at bar, we think that the plaintiff was not lacking in diligence, and that the mistake made by plaintiff was in a large part induced by the owner's misrepresentation.

*Phillips v. Behn & Foster*, 19 Ga. 298, also cited by defendant, is a case where the sheriff sought to with-

hold funds derived from a sale under fi. fas. against the property of one Hampton. Among other reasons assigned by the sheriff in justification of such a course, was the fact that Wm. H. Young & Co. had advanced to the sheriff a certain fund on judgment indebtedness of said Hampton, which judgments were older than the Behn and Foster judgment, or any of the mortgages. Said Young & Company took a mortgage junior to said Behn and Foster judgment and the other mortgages in suit; and counsel for Young & Company had asked time to file a bill against the other creditors that a decree might be rendered subrogating them to the rights and liens so paid for to the sheriff, and providing generally for the distribution of the fund in court settling the equities between all the parties in interest. While there were irregularities arising in the transfer of the records from the older county of Baker, in which the judgments were originally rendered, to the county of Dougherty, in which latter county the fi. fas. had issued, there is nothing in the opinion indicating that there was any misrepresentation or mistake prompting Young & Company to take a mortgage for their advances.

The court indulged in the presumption that Young & Company intended to extinguish the judgments for the payment of which they made the advances and to rely exclusively on the mortgage for their security. Applying that presumption, the Georgia court held that because of those judgments—judgments to be considered extinguished—there were no rights in existence to which Young & Company could be subrogated.

In *Fort Dodge Building & Loan Association v. Scott*, 86 Iowa 431, 53 N. W. 283, on January 6, 1888, plaintiff made a loan to defray certain mortgages. On the 23rd

day of November, 1887, an action of foreclosure was commenced against the owner, and on the 16th day of December, 1887, judgment was rendered in said action. Plaintiff had an abstract of title made up to December 8, 1887, but did not have it brought to the date of the loan. The abstract, upon which plaintiff relied, failed to note the pendency of the action in foreclosure. The court held that the plaintiff was negligent in not examining the court records on the day the loan was made. It is expressly stated in the opinion: "There was no mistake, except that the plaintiff failed to exercise the diligence required in the examination of the records." There is nothing in the opinion indicating that any misrepresentation was made to plaintiff as in the case at bar to the effect that there was no judgment lien.

So too, in *Isom v. Larson*, also cited by defendant, it does not appear that there was any misrepresentation to the effect that the intervening judgment was nonexistent: *Isom v. Larson*, 78 Mont. 395, 255 P. 1049.

■ We think that where the holder of the junior lien will stand in the same position, if subrogation is allowed, as that in which he stood originally, and misrepresentation is made by the owner of the property to the effect that there is no junior lien, and the party advancing the money to defray the prior lien is not guilty of negligence, but secures an abstract from a reputable abstract company, submits the abstract to skilled attorneys and receives a report to the effect that it does not disclose any such junior lien upon the property involved, the right of substitution or subrogation to the priority of the prior lien is available.

As to the statute of limitation barring that right in the instant case, we are referred to sections 54-111, 54-112 and 54-114, Oregon Code 1930.

Section 54-111 is as follows:

"Lien of mortgage — Statute of Limitation — No mortgage upon real estate now, heretofore or hereafter given, shall be a lien or incumbrance, or of any effect or validity for any purpose whatsoever, after the expiration of ten years from the date of the maturity of the obligation of indebtedness secured or evidenced by such mortgage, or from the date to which the payment thereof has been extended by agreement of record. If the date of the maturity of such obligation or indebtedness is not disclosed by the mortgage, itself then the date of the execution of such mortgage shall be deemed the date of the maturity of the obligation or indebtedness secured or evidenced by such mortgage."

Section 54-112 is as follows:

"Presumption of payment from expiration of time. After ten years have elapsed from the date of the maturity of any mortgage upon real estate, as herein provided in section 54-111, such mortgage shall conclusively be presumed to be paid, satisfied and discharged, and no action, suit or other proceeding shall be maintainable for the foreclosure of the same."

Section 54-114 deals with the effect of partial payment of a mortgage and is not relevant to the facts in the instant case.

■ As to the suggestion that the payment of the prior lien bars the assertion of the right to subrogation, it is apparent that there could be no subrogation if such a doctrine be observed. Payment of the prior lien is essential to the right of subrogation thereto.

■ As to the provisions of the above quoted sections, it is apparent that the bar therein prescribed applies only to mortgages maturing more than ten years before the assertion of a lien thereupon. As stated, this suit was instituted on May 6, 1937. The mortgage evidencing the prior lien, namely, the mortgage held by the

Union Savings & Loan Association would not have matured until May, 1931. This is shown by the terms of said mortgage. Ten years would not elapse thereafter until May, 1941, which is approximately four years subsequent to the time when the instant case was instituted.

■ Section 1-204, Oregon Code 1930, fixes six years as the time within which an action may be instituted upon a contract or liability, express or implied, excepting judgments or decrees; and fixing the same period for instituting an action upon a liability created by statute other than a penalty or forfeiture, an action for waste or trespass upon real property and an action for taking, detaining or injuring personal property including an action for specific recovery thereof.

We think that this section, when considered together with section 6-103, ibid, does not bar plaintiff's suit herein.

Among other things, said section 6-103, provides:

"In a suit upon a new promise, fraud, or mistake, the limitation shall only be deemed to commence from the making of the new promise or the discovery of the fraud or mistake."

Plaintiff's cause of suit is based upon fraud and mistake inducing plaintiff's assignor to make payment of the prior lien mentioned. No question was presented as to the net returns to plaintiff from the property, in suit, during plaintiff's control of it.

For these reasons, the decree of the circuit court is affirmed.

Rand, C. J., and Rossman and Bailey, JJ., concur.