STATE OF MAINE
Cumberland, ss. Clerk's Office

SEP 2 5 2017
9:19 a.m.
RECEIVED

**STATE OF MAINE**                                                          **SUPERIOR COURT**

**Cumberland, ss.**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

**Plaintiff**

v.                                          **Docket No. PORSC-RE-16-0310**

**ONEWEST BANK, N.A. et als.**

**Defendants**

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a foreclosure/quiet title case brought by Federal National Mortgage Association (FNMA) to remove a cloud on its title to property located in Gorham, Maine. This action is necessary because several entities and individuals who may hold or claim interests in the property were not joined as parties in a previous foreclosure action commenced by FNMA's predecessor in interest.

Plaintiff FNMA has filed a motion for summary judgment that has been opposed only by Defendant Bank of America, N.A. (BANA), which FNMA's amended complaint identifies as a junior mortgage holder. BANA contends that FNMA's ownership interest is subject to BANA's mortgage interest under the doctrine of equitable subrogation. Specifically, BANA contends that, although its predecessor's mortgage is junior to FNMA's predecessor's mortgage, BANA's predecessor paid off a mortgage that was senior to FNMA's predecessor's mortgage, so BANA is subrogated to the position of the prior mortgagor and its interest takes

1

priority over FNMA's interest. The issue of priority as is the sole contested issue addressed in the motion filings.

Oral argument on FNMA's summary judgment motion was held August 29, 2017, at which point the court took the motion under advisement.

For the reasons set forth below, the court is granting the Plaintiff's Motion.

*Factual Background*

The underlying facts are convoluted, if not confusing. The following summary is taken from the parties' respective statements of fact.

In 2005, Sondra Allen acquired a parcel of about eight acres located on Middle Jam Road in the Town of Gorham, Maine, by virtue of a deed from Clarice Allen, recorded at Book 22483, Page 322, Cumberland County Registry of Deeds.[1] Clarice Allen obtained her title through a deed to her from the Estate of Ernest Marsh dated January 9, 1984 and recorded at Book 6371, Page 332.

Neither the 1984 deed to Clarice Allen nor the 2005 deed from Clarice Allen to Sondra Allen contains a metes and bounds description of the property conveyed. Instead, the two deeds incorporate by reference the property conveyed in two deeds recorded in 1909 and 1916, neither of which is in the record

In 2006, Sondra Allen executed two deeds to herself relating to the Middle Jam Road property.

One deed, dated September 21, 2006 and recorded September 28, 2006 at Book 24412, Page 43, contains 11 calls, and is said to describe property four acres in

---

[1] All book and page references herein refer to the Cumberland County Registry of Deeds.

2

area constituting a portion of the property conveyed to Sondra Allen by Clarice Allen in 2005. The Town tax assessment material included in BANA's opposition identifies the property as being 6.2 acres in area. The property conveyed in this deed is described as being at 10 Middle Jam Road. The deed covering this property is referred to herein as "the 10 Middle Jam Road deed."

The other deed, dated July 14, 2006 and recorded September 28, 2006, is recorded at Book 24412, Page 45. This deed contains a metes and bound description in six calls and is said to describe property four acres in area. The Town tax assessment material included in BANA's opposition identifies the property as being only 2.0 acres in area. This deed asserts that it is intended to convey what Sondra Allen acquired from Clarice Allen in 2005, but that appears to be a mistake. The deed describes a parcel adjoining the lot described in the 10 Middle Jam Road deed.

The second call in both deeds—821.3 feet "along the land of the Grantor"--indicates that the two deeds were meant to divide Sondra Allen's property into two lots. Because her 2005 deed from Clarice Allen does not contain a metes and bounds description, however, the record does not enable the court to confirm that the two 2006 deeds describe all of what Sondra Allen had acquired under the 2005 deed.

Around the same time, Sondra Allen took out a $129,000 mortgage loan from a lender called America's Wholesale Lender (AWL). The record contains a corrective mortgage recorded September 29, 2006 at Book 24415, Page 1. The property description annexed to the mortgage is the same as that shown in the 2005

3

Clarice Allen deed to Sondra Allen, meaning that the AWL mortgage apparently covers both of the lots created by the two deeds she had just recorded.

In March 2007, Sondra Allen took out another mortgage loan, this time with IndyMac Bank, FSB (IndyMac). The mortgage is dated March 6, 2007 and recorded in the Cumberland County Registry of Deeds in Book 24925, Page 114 ("the IndyMac Mortgage"). The property description attached to the mortgage is the same as that contained in the 10 Middle Jam Road deed at Book 24412, Page 43.

Although the IndyMac mortgage appears to cover part of the property that Sondra Allen had previously mortgaged to AWL in 2006, the record does not indicate that any of the IndyMac loan proceeds were used to pay off or pay down the AWL mortgage.

In 2010, Sondra Allen conveyed to Scott Davies property described in a deed recorded at Book 27757, Page 80 on May 7, 2010. That property is referred to as "the Davies lot." The address assigned to the Davies lot appears to be 12 Middle Jam Road. The metes and bounds description for the Davies lot does not match the description of either of the two lots Sondra Allen created in 2006—the 10 Middle Jam Road lot and the adjoining lot. Thus, in deeding over the Davies lot, Sondra Allen created a new lot.

It is not possible on this record to determine where the new Davies lot lies in relation to the two lots she created in 2006. There are no surveys in the record and the deed for the Davies lot does not refer to either of the two lots created in 2006. The Davies lot might lie entirely within one or the other of the two 2006 lots or it

4

might straddle the two. FNMA and BANA both seem to assume that there is some overlap between the Davies lot and the 10 Middle Jam Road lot; otherwise, there would be no priority issue between them, so the court will proceed on that basis.[2]

Scott Davies financed his purchase of the Davies lot by means of a mortgage loan from Merrimack Mortgage in the amount of $171,428. Merrimack's mortgage covers the same property described in the deed to Scott Davies. A portion of the proceeds of the Merrimack loan to Scott Davies was used to pay off the AWL loan. The payoff figure was $146,958.43. BANA now holds the mortgage on the Davies lot and BANA's equitable subrogation claim is based on Merrimack's payoff of the AWL loan.

Also in 2010, OneWest Bank, the successor to IndyMac, commenced a foreclosure action based on the IndyMac loan and later obtained a foreclosure judgment. *See OneWest Bank, FSB v. Sondra Allen*, Me. Super. Ct., Cum. Cty., Docket RE-10-48. OWB was the high bidder at the foreclosure auction, and has since assigned its rights to FNMA. Because OneWest did not name Scott Davies, BANA

---

[2] If there is no overlap between the 10 Middle Jam Road lot that FNMA owns and the Davies lot on which BANA holds a mortgage, then there is nothing in dispute between BANA and FNMA. However, if the two lots do overlap, relief not raised or sought in this case may be needed to resolve all issues between FNMA and BANA, such as an alignment of boundaries, partition or other resolution of the overlap. Because FNMA and BANA have neither raised those issues nor given this court a basis on which to address them, they will be left to the future. All that the judgment that the court is issuing in this case does is say that FNMA's ownership interest in the 10 Middle Jam Road lot takes priority over BANA's interest in whatever part of the 12 Middle Jam Road lot overlaps with the 10 Middle Jam Road lot.

and other defendants, FNMA as successor to OneWest has brought this case to clear its title.[3]

## Standard of Review

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774.

Maine Rule of Civil 56 requires that motions for and opposition to summary judgment must be supported by separate, short, and concise statements of material facts. M.R. Civ. P. 56(h)(1)-(2). Each assertion of fact set forth in a statement of material facts must be supported by a citation to the specific page or paragraph of

---

[3] Both the IndyMac mortgage from which FNMA's interest derives and the Merrimack mortgage from which BANA's interest derives involved MERS as nominee for the mortgage lenders. Neither FNMA nor BANA has raised any issue in this case as to the validity of assignments of mortgages by or to MERS. *See Bank of America v. Greenleaf*, 2014 ME 89, ¶ 12, 96 A.3d 700; *Mortgage Electronic Registration System, Inc. v. Saunders*, 2010 ME 79, ¶¶ 10-11, 2 A.3d 289. Accordingly, the issue will be deemed waived.

identified record evidence supporting the assertion. M.R. Civ. P. 56(h)(4). The record evidence cited must be "of a quality that could be admissible at trial." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653. The court may disregard any assertions of fact not properly supported. M.R. Civ. P. 56(h)(4).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

*Analysis*

Based on a review of the various deeds and mortgages referred to above, as well as the parties' legal memoranda, the following observations are in order:

Because Sondra Allen's two 2006 deeds conveyed property to herself, she still owned all of what she acquired from Clarice Brown in 2005. Because the property description in the AWL mortgage is the same as that in the 2005 deed by which Sondra Allen acquired the Middle Jam Road property, AWL's 2006 mortgage covered all of what Sondra Allen owned.

The IndyMac mortgage covered only the 10 Middle Jam Road lot created by virtue of the 2006 deed recorded at Book 24412, Page 43. However, because the AWL mortgage covered both that lot and the other lot created by the other 2006 deed, the IndyMac mortgage was junior to the AWL mortgage.

Why IndyMac made the loan to Sondra Allen in 2007 without requiring the AWL mortgage to be paid off is unexplained in the record. The Merrimack mortgage now held by BANA covered only what Sondra Allen conveyed to Scott

Davies. Why Merrimack made the loan to Scott Davies without requiring the IndyMac loan to be paid off is also unexplained in the record.

The court is inclined to think, contrary to FNMA's argument, that the doctrine of equitable subrogation applies in principle to these facts. *See United Carolina Bank v. Beesley,* 663 A.2d 574 (Me. 1995). The *Beesley* case involved a lender being equitably subrogated to a prior lender's claim against borrowers but the doctrine applies equally to priority among mortgage lenders and lienholders. BANA's predecessor, Merrimack, paid off the AWL loan. Had that loan not been paid off, FNMA's ownership interest would be subordinate to the AWL loan. Thus, BANA has shown that FNMA did benefit from the payoff. The fact that the IndyMac mortgage and the Merrimack mortgage involved different borrowers does not, in this court's view, defeat BANA's claim, because the doctrine can apply to give a junior creditor who satisfies a prior encumbrance the priority assigned to the prior encumbrance. *See G.E. Capital Mortgage Services, Inc. v. Levenson,* 338 Md. 227, 657 A.2d 1170 (Md. 1995); *Dodge City of Spartanburg, Inc. v. Jones,* 317 S.C. 491, 454 S.E.2d 918 (S.C. Ct. App. 1995); *Metropolitan Life Insurance Co. v. Craven,* 164 Ore. 274, 101 P.2d 237 (Ore. 1940).

On the other hand, the court concludes that BANA's equitable subrogation claim is untimely. BANA's answer to FNMA's Amended Complaint was docketed January 27, 2017. BANA was on notice through the Amended Complaint that FNMA was asking the court to adjudicate priorities as between FNMA and BANA and the other Defendant creditors or lienholders. BANA's answer did not raise any

affirmative defenses and did not in any way raise any issue regarding priority. Arguably, any subrogation claim is an affirmative claim that has to be raised in a complaint, counterclaim or similar pleading seeking affirmative relief. However, at a minimum it is an affirmative defense to an opposing creditor's claim of priority, and it should have been raised in BANA's answer, at minimum.

The court's February 28, 2017 scheduling order set a discovery deadline of June 1, 2017. Had BANA's answer identified equitable subrogation as an affirmative defense or otherwise indicated that BANA was claiming priority over FNMA's ownership interest, FNMA could have pursued discovery. FNMA's Motion for Summary Judgment was filed in May 2017, before the discovery deadline, so even then, BANA could have asked for discovery to be extended. Instead, as far as the record shows, the first BANA indicated it was claiming priority based on equitable subrogation was in the opposition papers it filed after the discovery deadline.

Resolution of the motion was delayed so oral argument could be held—not any party's fault but a factor that argues against re-opening discovery, which the court in fairness would have to allow on FNMA's request, if the court were to allow BANA's untimely equitable subrogation claim to defeat FNMA's Motion.

Under these circumstances, the court declines to consider the equitable subrogation claim that BANA raises. Because that is the only basis for BANA's opposition, Plaintiff's Motion will be granted.

Accordingly, it is ORDERED: Plaintiff's Motion for Summary Judgment is granted. A separate judgment is being issued herewith.

9

**Parties & Counsel:**

Plaintiff:
Federal National Mortgage Association
Counsel: Santo Longo, Esq.

Defendant:
Onewest Bank NA
Counsel: Pro Se

Defendant:
Cach LLC
Counsel: Pro Se

Defendant:
Midland Funding LLC
Counsel: Pro Se

Defendant:
Dept of Treasury Internal Revenue Service
Counsel: Andrew Lizotte, Esq

Defendant:
State of Maine, Maine Revenue Services
Counsel: Pro Se

Defendant:
Mortgage Electronic Registration System
Counsel: Pro Se

Defendant:
Merrimack Mortgage Company Inc.
Counsel: Christopher Hawkins, Esq.

Defendant:
Scott H. Davies
Counsel: Pro Se

Defendant:
Bank of America NA
Counsel: James Coughenour Jr., Esq.